Chief Justice Robertson
delivered the Opinion of the Court.
The Lexington and Ohio Railroad Company having located their road through the land of Stephen Ormsby, junior, in a manner obviously injurious to him, he objected to the location; and, thereupon, the Company’s agent agreed to change it, if he would execute the following release — which he did accordingly execute: to wit.
“ Know all men by these present, that if, in the con- “ struction of the contemplated railroad, by the Lexing- “ ton and Ohio Railroad Company, the company should “ determine to construct the same through my land in “ Jefferson county, I do hereby give, grant, bargain, sell, “ convey and relinquish, to the said Lexington and Ohio “ Railroad Company, so much of my said land as the “ said company may desire — not exceeding four poles “ in width, upon which to construct their said road: “ provided said road shall not run farther north of my “ south-west corner than ten feet, and not farther north “ of my south-east corner than one hundred and forty “ feet.”
The company afterwards located their road through his land, so as to leave about nine feet between his south-west corner and the southern edge of the road, and not near as much as one hundred and forty feet between the south edge of the road and his north-east comer — the whole road between those points being on his land. Sometime after this last location, he ploughed the field through which it was made, leaving unploughed the sixty six feet which had been designated for the road by stakes; and also, told the contractor for the *277 construction of that part of the road, that he might go on with the construction through his land, according to the location as thus made.
Where there is-an ambiguity in a writing, pai taking of the nature of both patent and latent ambiguities — *, e. where the words used have a settled meaning,but admit of two interpretations, according to the subject matter in the contemplation of the parties-extrinsic facts, not contradictory of the writing , but which? will aid in upholding it, maybe proved by pa-rol, in order to explain the actual intention ofthe parties. Of that description is the relinquishment in this case, supra; and the fact that, after the road had been located, and staked off, entirely on the land of the grantor, he ploughed the field through which it passed, without touching it, and told the contractor to go on in constructing it as laid off, fortifies the above construction. Where a landowner — with a correct under - ■standing of the matter — has given permission , (verbally,) that a road may be constructed upon his land, or some specified part of it — a court of eq. should not interpose to restrain the grantee from using the privilege so conceded, merely because the grantee, having changed his mind, wishes to revoke his grant. —The trespass could be justified under a license.
*277 But, some ¡months afterwards, Ormsby filed-a bill in chancery for enjoining the company from proceeding with the construction according to the location — insisting, as he did, that such a location, taking from him more than ten feet of his land at his south-west corner, was not, either contemplated by him, or authorized by the true interpretation of the written contract.
The company, in its answer, insisted that the location of the road, as made, was authorized by the verbal agreement, and was also perfectly consistent with a proper construction of the terms of the written memorial of it, which, as they contend, imports that the entire width of the road (four poles or sixty six feet,) might be on his land, provided only, that the road should not run farther north of his south-west corner than ten feet, nor farther north of his south-east corner than one hundred and forty feet, which it does not do, as located, near either point.
Upon the final hearing of the cause, on the bill, answer and various depositions, the Chancellor perpetuated the injunction, so far as to restrain the Railroad Company from proceeding any farther in the construction of the road in such a manner as to extend any part of it, at Ormsby’s south-west corner, more than ten feet north of that cornel'.
The company prosecutes this writ of error to reverse that decree.
Waiving, as unnecessary to the decision of the case, the question made by the counsel of the plaintiff in error, as to the jurisdiction of the Chancellor, we are of the opinion that the facts exhibited in the record do not sustain the decree.
Looking at the written release alone, as the evidence of the intention of the parties to it, there might be some difficulty in determining with certainty what they understood by the proviso thirt the road should not run farther north of the south-west corner than ten feet. But considering the entire instrument altogether, we should, with *278 out any extraneous aid, be inclined to the opinion, that it imports a concession to the company of sixty six feet of land at that corner, (if so much should be deemed necessary,) with no other qualification than that the road (including the sixty six feet,) should not be farther north of that corner than ten feet; that is — not that there should not be, at that place, more than ten feet of Orms-by’s land taken by the road — but that there should not be more than ten feet between the road and the corner. It rather seems to us that he intended to relinquish (if so much should be desired by the company,) sixty six feet of his land for the road, through the whole extent of his east and west line.
“ The road,” without qualification, means the whole road, in width sixty six feet; and therefore, by prescribing that the road shall not run farther north of his southwest corner than ten feet, Ormsby should, as we are inclined to think, be understood as meaning that the entire road, when constructed, should not be farther north of that corner than ten feet. If he intended that no part of the road, at that point, should encroach on more than ten feet of his land, then, in no event, was he relinquishing, of that part of his tract, as much as one sixth of the ground required for the width of the road, although he had just said, in the same writing, that, if the company should determine to construct the road through his land, he relinquished sixty six feet, provided they should desire so much; thereby meaning, as we would infer, that the company might have a way sixty six feet wide through his entire tract. And this interpretation is fortified by the fact, that, after giving leave so to locate and make the road through his land, he certainly authorized the construction of it in such a manner as to cut off' and leave between the road and his south-west corner, a slip óf his land; and by the fact also, that the same words (“ the road shall not run farther north” &c.) are applied to the restriction at each end of his tract.
But should we be mistaken in the foregoing interpretation, we feel very confident that the construction claimed by Ormsby, and established by the Chancellor, is far from being a necessary or very clear deduction *279 from the terms and context of the writing. The most that c.ould, as we think, be said against our construction would be, that the relinquishment is ambiguous on its face. But even then, the ambiguity would be of that intermediate class, which, in the language of Judge Story, “partakes of the nature of both latent and patent ambiguities;” that is, as he defines it, “where the words “ are all sensible and have a settled meaning, but, at the “ same time, consistently admit of two interpretations “ according to the subject matter in the contemplation of the “parties.” If ours be not the apparent judicial interpretation of the writing itself, there is, we think, an ambiguity of the kind thus defined by Judge Story, in the case of Peich vs. Dickinson, (1 Mason’s Rep. 11;) and it arises only from the latent uncertainty as to “ the subject matter in the contemplation of the parties:” that is, thé road, and whether they contemplated the whole road or only the northern verge of it; and does not, in any degree, result from any obscurity in the words themselves, in respect to which, abstractly considered, there is certainly no patent ambiguity.
Judge Story illustrates this peculiar ’class of ambiguities by a written contract assigning a party’s freight in a ship — nothing else appearing. In such a case, though the word “freight ” has a determinate and well-understood abstract meaning, yet whether, in the case supposed, the parties intended by it “goods on board of the ship, or an interest in the earnings of the ship,” or what else precisely, could not be ascertained from the face of the writing, but would depend on extraneous circumstances, identifying the particular subject matter concerning which the word “freight” was used. Other apposite illustrations are given in Starkie on Evidence, Ath part, title “Parol Evidence.” And, in such a case, extrinsic facts may be proved by witnesses; because they will not contradict, but will only aid in upholding, the writing, according to the actual intention of the parties to it.
Upon the hypothesis that there is any ambiguity in the relinquishment by Ormsby, the depositions, read on the hearing of the case, for the purpose of rendering certain that which otherwise might be considered uncer *280 tain, were admissible as evidence, and leave no ground to doubt that the parties intended what we have already supposed that they did. And this deduction is, also, fortified by the fact that, after the last location of the road had been made and was understood by Ormsby, he seemed to acquiesce in it, and authorized the “contractor” to begin the construction of the road as thus heated.
There is, therefore, no ground for the injunction.
But even if the location, as made, had not been within the scope of the contract as understood by the parties, still Ormsby had no equitable claim to the intervention of the Chancellor, for enjoining the company from doing what he had expressly and understandingly authorized it to do, through its constituted agent for constructing the road.
Had he yielded the same permission without any previous contract on the subject of the road, certainly the Chancellor should not help him to revoke the authority he had thus freely given, and prevent the execution of it, merely because, without any reason not existing and known when it was given, he had seen fit to change his mind. Even in such a state of case, the Railroad Company could not be deemed a trespasser on his land, for only doing, in a proper manner, that which he authorized it to do, and which it was in the act of doing when arrested by his injunction.
It is therefore the opinion of this Court, that there is no sufficient ground for the injunction decreed by the Chancellor.
Upon Ormsby’s cross assignment of error — in which he complains that the Chancellor erred in deciding that, for all the purposes of this suit, the beach should be considered to be his south-west corner — we deem it necessary only to suggest that the evidence rather preponderates in favor of that, as his actual south-west corner; but that even if it be not his true corner, it was evidently the south-west comer contemplated by both parties, when the relinquishment was executed. And that, therefore, there is no error in the decree in this respect.
Wherefore, the decree is reversed, and the cause remanded, with instructions to dissolve the complainant’s injunction, and dismiss his bill with costs.