171 U.S. 260 (1898)
NORTHERN PACIFIC RAILROAD COMPANY
v.
SMITH.
No. 98.
Supreme Court of United States.
Argued March 21, 1898.
Decided May 31, 1898.
ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.
*265 Mr. C.W. Bunn, for plaintiffs in error. Mr. C.W. Halcomb, by leave of court, filed a brief for same.
Mr. H.F. Stevens for defendant in error.
MR. JUSTICE SHIRAS, after stating the facts, delivered the opinion of the court.
By the second section of the act of July 2, 1864, creating the Northern Pacific Railroad Company, there was granted *266 to that company, its successors and assigns, the right of way through the public lands to the extent of two hundred feet in width on each side of said railroad where it may pass through the public domain.
During the year 1872, there was a line staked out across the tract, a portion of which is in dispute in this case, substantially where the railroad is now constructed, but no grading was done on this line until the spring of 1873. In the latter year the railroad was constructed across this tract, and has since remained and been operated upon it. The lots in question are within two hundred feet of the main track of this railroad as actually constructed, and have been occupied by the defendant during the entire period since the construction of the road, excepting lots eleven and twelve, which during about three years were in the adverse possession of the firm of Browing & Wringrose and of Patrick R. Smith, the defendant in error, as the tenant of said firm.
In 1877 an action of ejectment, to recover possession of said lots eleven and twelve, was brought by the Northern Pacific Railroad Company, in the district court of the Territory of Dakota against Browing & Wringrose and said Patrick R. Smith, which action resulted, on January 31, 1878, in a final judgment, still subsisting, against said Smith and the other defendants.
On the trial of the present action, which was brought in the Circuit Court of the United States for the District of North Dakota in 1893, and which brought into question the title and possession of lots five, six, seven, eight, nine and ten, as well as of lots eleven and twelve, the plaintiff, Patrick R. Smith, set up, as the basis of his title and right of possession, a deed of conveyance by the corporate authorities of the city of Bismarck of the said lots as part of a town site plat patented to John A. McLean, as mayor of said city, on July 21, 1879. The record does not disclose a copy of such deed to Smith, nor its date. In his complaint Smith alleged that "on the fourteenth day of September, A.D. 1876, he became and ever since has been and still is duly seized in fee simple and entitled to the possession" of the property in dispute. *267 In the findings it is stated that the city authorities conveyed these lots to Patrick R. Smith, the plaintiff, subsequently to the granting of the patent to the mayor on July 21, 1879.
The defendant, the Northern Pacific Railroad Company, at the trial relied on its grant of a right of way from the United States on July 2, 1864, on its possession of lots six, seven, eight, nine and ten since the construction of the railroad in 1873, and of lots eleven and twelve since their recovery under the action and judgment in 1878, and the company likewise put in evidence the record of said suit and recovery as constituting res judicata.
The learned judge of the Circuit Court, after stating the foregoing facts, and some others not necessary to be here mentioned, entered judgment that the plaintiff was entitled to recover the possession of all of said lots and the sum of twenty-six thousand dollars, as the value of the use and occupation of the premises in question, for six years prior to December 28, 1891, the date of the commencement of the action; and that judgment was affirmed by the Circuit Court of Appeals. 32 U.S. App. 573.
When it was made to appear that, by the second section of the act of July 2, 1864, there was granted to the Northern Pacific Railroad Company a right of way through the public lands, to the extent of two hundred feet in width on each side of said railroad; that, in pursuance of said grant, the railroad company had constructed its road in 1873, including in its right of way the land in dispute; that, on November 24, 1873, commissioners, appointed under the fourth section of said act, reported that they had examined the Dakota division of said railroad, (including that portion of the same which covered the land in controversy,) and that they had found its construction and equipment throughout to be in accordance with the instructions furnished for their guidance by the Interior Department, and accordingly recommended the acceptance of the road by the Government; that said report had been, on December 1, 1873, approved by the President; and that the company had maintained and operated said railroad since its said construction to the time of trial, undoubtedly *268 there was thus disclosed a prima facie title and right of possession of the disputed tract.
To overthrow the railroad company's case the plaintiff depended on an alleged conveyance made to him after July 21, 1879, by the city authorities of the city of Bismarck, of the lots in dispute in this suit, and gave evidence that the eighty-acre tract on which these lots were situated was selected as a portion of a town site and surveyed prior to June 20, 1872, by the Lake Superior and Puget Sound Land Company, and that said land company made and, on February 9, 1874, recorded, a plat thereof, and that said town site and plat was afterwards adopted as the town site of the city of Bismarck under the town site act of the United States, (sec. 2387, Rev. Stat.,) and was patented as such town site to John A. McLean, mayor of said city, on July 21, 1879. The Congressional township embracing the premises in question was surveyed in the months of October and November, 1872, and the plat thereof was filed in the General Land Office in March, 1873.
It is evident that, when in 1873, the Northern Pacific Railroad Company took possession of the land in dispute, as and for its right of way, and constructed its road over and upon the same, if the tract so taken was then part of the public lands, only the United States could complain of the act of the company in changing the location of its tracks from that previously selected. But, so far as this record discloses, the United States did not object to such change of location, but rather, by having, through the commissioners and the President, approved and accepted this part of the road when constructed, must be deemed to have acquiesced in the change of location as properly made.
But was the land in question part of the public domain in the spring of 1873? It certainly was, unless the occupation, at that time, of those who afterwards, in 1879, obtained a patent for a tract of eighty acres, including the land in question as part thereof, for a town site, deprived it of that character.
It has frequently been decided by this court that mere occupation and improvement on the public lands, with a *269 view to preëmption, do not confer a vested right in the land so occupied; that the power of Congress over the public lands, as conferred by the Constitution, can only be restrained by the courts, in cases where the land has ceased to be Government property by reason of a right vested in some person or corporation; that such a vested right, under the preëmption laws, is only obtained when the purchase money has been paid, and the receipt of the proper land officer given to the purchaser. Frisbie v. Whitney, 9 Wall. 187; The Yosemite Valley case, 15 Wall. 77; Buxton v. Traver, 130 U.S. 232; Northern Pacific Railroad v. Colburn, 164 U.S. 383.
If, then, one seeking to appropriate to himself a portion of the public lands cannot, no matter how long his occupation or how large his improvements, maintain a right of possession against the United States or their grantees, unless he has, by entry and payment of purchase money, created in himself a vested right, is one who claims under a town site grant in any better position?
No cases are cited to that effect; nor does there seem to be any reason, in the nature of things, why rights created under a town site settlement should be carried back, by operation of law, so as to defeat the title of a party who had, under color of right, taken possession and made valuable improvements before the entry under the town site act.
It is one of the findings of fact that, in the year 1872, the Lake Superior and Puget Sound Land Company occupied a tract of land, including within its boundaries the land in dispute, but it is also found that no plat thereof was filed in the register's office until February 9, 1874, a year after the railroad company had gone into possession and constructed its road, and that the patent was not granted to the mayor in behalf of the city of Bismarck till July 21, 1879. It is also one of the findings that the corporate authorities did not convey these lots to Patrick R. Smith till after the grant of the patent.
The record contains no copy of the deed to Smith, nor statement of any consideration paid by him, nor of the date when, if ever, he went into actual possession.
*270 In such a state of facts will the law overturn the title of the railroad company by imputing to Smith the antecedent possession of the Lake Superior and Puget Sound Land Company? Whatever may be his rights to the land outside of that in possession of the railroad company, must it not be inferred that he bought subject to the public highway? It is found that in the month of June, 1873, the railroad had been constructed across this tract, and has since remained and been operated upon it; and it is hard to imagine what notice more distinct and actual could be given than that afforded by the operation of a railroad. Moreover, this record discloses that Smith on or about November 1, 1876, (more than three years after the completion of the railroad,) went into possession of a portion of the land in dispute as a tenant of other parties, and that he was ousted therefrom by a final judgment in an action of ejectment at the suit of the railroad company on January 31, 1878.
Apart from the legal effect of that judgment as res judicata, it is thus quite apparent that Smith thereby was visited with notice of the claim of the railroad company.
But suppose it be conceded, for the sake of the argument, that the Lake Superior and Puget Sound Land Company made the first entry, and that the city of Bismarck and Smith as its grantee could avail themselves of such entry, still the proof is that the railroad company completed its road over the land before the town site was patented, and before Smith obtained his conveyance. To acquire the benefit tendered by the act of 1864 nothing more was necessary than for the road to be constructed. The railroad company by accepting the offer of the Government obtained a grant of the right of way, which was at least perfectly good as against the Government. And be it further conceded, but not decided, that the railroad company when it changed its route, after the filing of its map of definite location, lost its priority of right under the grant of the act of 1864 as against subsequent grantees of the United States who obtained title before the actual construction of the railroad, and that the railroad company could only legally proceed under the exercise of its right of eminent domain, it *271 still remains, as we think, under the facts of this case, that Smith could not maintain his present action seeking to oust the company from possession of its right of way and railroad constructed thereon.
There is abundant authority for the proposition that, while no man can be deprived of his property, even in the exercise of the right of eminent domain, unless he is compensated therefor, yet that the property holder, if cognizant of the facts, may, by permitting a railroad company, without objection, to take possession of land, construct its track, and operate its road, preclude himself from a remedy by an action of ejectment. His remedy must be sought either in a suit in equity, or in a proceeding under the statute, if one be provided, regulating the appropriating of private property for railroad purposes.
Such were the facts in the case of McAulay v. Western Vermont Railroad Company, 33 Vermont, 311, and where Chief Justice Redfield delivered the opinion of the court, a portion of which we quote:
"It being admitted, as it seems to be, that the plaintiff had full knowledge of the proceedings of the company to locate and construct their road upon his land, before and during all the time of the construction, and that he did not interfere in any way to prevent the occupation of the land for the purposes of the road, otherwise than by forbidding the hands working on the road until his damages were paid, and that only on one occasion, it becomes an important inquiry whether he can maintain ejectment for the land by reason of the non-payment of his damages... . It is undoubtedly true that, according to our general railroad statutes and the special charters in this State, the payment or deposit of the amount of the land damages, assessed or agreed, is a condition precedent to the vesting of the title, or of any right in the company to construct their road, and that if they proceed in such construction without this, they are trespassers, and this has been repeatedly so held by this court.
"This may have led to the misapprehension in the present case, but it certainly is a very serious misapprehension. In *272 these great public works the shortest period of clear acquiescence, so as fairly to lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to stop the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance. The party does not, of course, lose his claim or the right to enforce it in all proper modes. He may possibly have some rights analogous to the vendor's lien in England, and here until the legislature cut it off. But it is certain, according to the English decisions, that he cannot stop the work, and especially the trains upon the road, if he has, in any sense, for the shortest period, clearly given to the company, either by his express consent, or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation... . If there was then a waiver in fact, either express or implied, by acquiescence in the proceedings of the company, to the extent of not insisting upon payment as a condition precedent, but consenting to let the damages be and remain a mere debt, with or without a lien upon the roadbed, as the law may turn out to be, then it is impossible to regard the defendants in any sense in the light of trespassers or liable in ejectment."
Justice v. Nesquehoning Valley Railroad, 87 Penn. St. 28, was a case where a railroad company was a trespasser, and its entry upon land not in conformity with law, and it was held that these irregular proceedings did not operate as a dedication to the landowners of the property of the company, placed upon the land, so as to entitle said landowners to include said property in an assessment of damages under the railroad law, and recover their value as an accession to the value of the land taken by the company. In delivering the opinion of the Supreme Court, Chief Justice Agnew said:
"This is not the case of a mere trespass by one having no authority to enter, but of one representing the State herself, clothed with the power of eminent domain, having a right to enter, and to place these materials on the land taken for a *273 public use  materials essential to the very purpose which the State has declared in the grant of the charter. It is true the entry was a trespass, by reason of the omission to do an act required for the security of the citizen, to wit, to make compensation or give security for it. For this injury the citizen is entitled to redress. But his redress cannot extend beyond his injury. It cannot extend to taking the personal chattels of the railroad company. They are not his and cannot increase his remedy. The injury was to what the landholder had himself, not to what he had not. Then why should the materials laid down for the benefit of the public be treated as dedicated to him? In the case of a common trespasser the owner of the land may take and keep his structures, nolens volens, but it is not so in this case; for though the original entry was a trespass, it is well settled, that the company can proceed, in due course of law, to appropriate the land, and consequently to reclaim and avail itself of the structures laid thereon."
In Provolt v. Chicago, Rock Island & Pacific Railroad, 57 Missouri, 256, it was held that the conduct of a landholder in standing by while a railroad company constructed its road, precluded him from recovering physical possession of the land covered thereby. Judge Wagner, after quoting with approval the language of Chief Justice Redfield in McAulay v. Western Vermont Railway Co., hereinbefore cited, said:
"The plaintiff did not attempt to obstruct or in anywise impede the progress of the work. The plain inference was that he waived his right for prepayment of his damages and only intended to follow his remedy on his judgment. His conduct surely led the company to believe such was his purpose and induced them to pursue a course and expend large sums of money which, otherwise, they would not have done. If plaintiff intended to rely on his rights and make present payment a condition precedent, he should have objected and forbidden the company to interfere or to do any work on his land till the question of damage was settled. But this he did not do. He acquiesced in the proceedings of the company to the extent of not insisting upon the prepayment as a condition *274 precedent; and after having done so, we do not think that he can maintain ejectment.
"If from negotiation in regard to the price of the land, or for any other reason, there is just ground of inference that the works have been constructed with the express or implied assent of the landowner, it would seem wholly at variance with the expectations of the parties and the reason of the case, that the landowner should retain the right to enter upon the land, or to maintain ejectment. There are other effective and sufficient remedies. A court of equity would unquestionably interfere, if necessary, and place the road in the hands of a receiver until the damages were paid from the earnings. (2 Redf. Am. Railw. Cas. 2d ed. 353.) But the only question we are called upon to decide is whether under the facts and circumstances of this case ejectment will lie, and we think it will not."
A similar question was decided in the case of The Omaha and Northern Nebraska Railway v. Redick, 16 Nebraska, 313. This was an action of ejectment for the possession of a forty-acre tract of land, brought by a landowner against a railroad company, which had constructed its road over said tract. It seems that the plaintiff, as one of the directors of the railroad company, had known that the company was constructing its road across its lands, and had remained quiet. The court said:
"It is true that under the constitution and laws of this State the assessment of damages and payment or deposit of the amount is a condition precedent to the vesting of the title or of any right of the company to construct their road. But these conditions are susceptible of being waived... . Whatever right the plaintiff may have against the railroad company, growing out of this right of way question, and whether he is estopped in pais to assert any and all of them, it seems clear that he is not entitled to a judgment that would enable him to sever a line of commerce which, by his assent if not through his active agency in part, was constructed over this same property, and has enjoyed free passage over it for at least seven years."
*275 The same conclusion was reached in Lexington & Ohio Railroad v. Ormsby, 7 Dana, 276; Harlow v. Marquette &c. Railroad, 41 Michigan, 336; Cairo and Fulton Railroad v. Turner, 31 Arkansas, 494; Pettibone v. Lacrosse and Milwaukee Railroad, 14 Wisconsin, 443; Chicago and Alton Railroad v. Goodwin, 111 Illinois, 273; Kanaga v. Railway Co., 76 Missouri, 207; Dodd v. St. Louis & Hannibal Railway, 108 Missouri, 581; Evansville & Terre Hauts Railroad v. Nye, 113 Indiana, 223.
This subject was fully considered by this court in the case of Roberts v. Northern Pacific Railroad, 158 U.S. 1, where, upon the foregoing authorities and others, it was held that if a landowner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with a statute requiring either payment by agreement or proceedings to condemn, remains inactive and permits it to go on and expend large sums in the work, he is estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and will be restricted to a suit for damages.
Upon principle and authority we therefore conclude that neither the city of Bismarck, as owners of the town site, nor its grantee Smith, can, under the facts and circumstances shown in this record, disturb the possession of the Northern Pacific Railroad Company in its right of way extending two hundred feet on each side of its said road. The finding of the trial court, that only twenty-five feet in width has ever been occupied for railroad purposes, is immaterial. By granting a right of way four hundred feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance, and it was not competent for a court, at the suit of a private party, to adjudge that only twenty-five feet thereof were occupied for railroad purposes in the face of the grant and of the finding that the entire land in dispute was within two hundred feet of the track of the railroad as actually constructed, and that the railroad company was in actual possession thereof by its tenants. The precise character of the business *276 carried on by such tenants is not disclosed to us, but we are permitted to presume that it is consistent with the public duties and purposes of the railroad company; and, at any rate, a forfeiture for misuser could not be enforced in a private action.
These views dispose of the case, and render it unnecessary to determine whether the trial of the title of lots eleven and twelve, in the action between the railroad company and Smith, as a tenant of Browing & Wringrose, resulting in a final judgment, was well pleaded as res judicata in the present action.
The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is also reversed, and the cause remanded to that court with a direction to enter a judgment in favor of the defendants.
MR. JUSTICE GRAY and MR. JUSTICE WHITE concurred in the judgment of the court only on the ground first stated in the opinion of the court, that is, the sufficiency of the title of the railroad company.
MR. JUSTICE BREWER, concurring specially:
I concur in a reversal of the judgments below but not in all the conclusions reached in the foregoing opinion, nor in the direction to enter judgment for the defendant. I think the estoppel relied on goes only to the ground actually occupied by the railroad company with its tracks, station houses and other buildings used exclusively for railroad purposes, and does not extend to the entire four hundred feet of the right of way which the company claims under the Congressional grant. It may be that a large portion of this tract is in only the constructive possession of the company, or it may be occupied by the buildings not used exclusively for railroad purposes, and as to all such ground I do not think any estoppel extends.
I am also of the opinion that the legal title conveyed by the town site patent and the deed to plaintiff must prevail in this action at law over any equities the company may have acquired by occupancy.
MR. JUSTICE HARLAN dissented.