# MANUEL CIVIDANES ET AL.
*v.*
# HENRY DEFORD ET AL.

TRESPASS—INJUNCTION—INTERVENING PETITION—DEMURRER — EMINENT DOMAIN—RAILROAD COMPANY—ADEQUATE REMEDY AT LAW—LACHES.

1. Where trespasses go to the destruction of the substance of an estate, cannot well be measured in damages, and are of a continuing character, equity will interfere.

2. The Code of Commerce for Porto Rico of 1885 authorized the formation of railroad companies, and provided how it should be done. Also for the exercise of the right of eminent domain for a public utility, upon payment of indemnity.

3. The question of laches may be raised by demurrer. When a landowner has desisted from attempting to enjoin the occupation and use of his land by a railroad company so long that the company has in good faith expended large sums of money in making improvements, he has been guilty of such laches that an injunction will not be granted.

4. Moreover, when the company has made improvements of great value, and the public have become interested in its public service, it would be against public policy and inequitable to grant the landowner an injunction against the use of his land by the public servant.

April 6, 1903.

*Mr. C. M. Boerman* for complainants.

*Mr. F. H. Dexter* for defendants.

---

*Injunction to prevent trespass.* The authorities dealing with injunction against trespass to cut timber are presented in editorial note to Carney v. Hadley, 22 L. R. A. 233.

Cividanes v. Deford.

HOLT, Judge, delivered the following opinion:

The bill avers that the complainants, Manuel Cividanes and his wife, Rufina Sanchez de Cividanes, Spanish subjects, being the owners of a certain estate, also part owners, and lessees of another estate, and also part owners with a life estate in two other estates, the defendants, as an association known as the American Railroad Company of Porto Rico, Central Aguirre, Operator, on or about December 15th, 1902, entered forcibly and without right, by their servants and agents, upon the above-described properties, breaking down fences, cutting down trees, destroying cane thereon; and are continuing said alleged wrongs; and are in the occupation of a portion of said estates; resulting in the damage of many thousands of dollars to the complainants, and in irreparable damages if the alleged trespasses be allowed to continue.

An injunction is asked. The present hearing is upon motion by the complainants for a temporary injunction, and a demurrer by the defendants, and a motion to dismiss the bill. There is also a motion by the American Railroad Company of Porto Rico, Central Aguirre, Operator, to file its petition and be made a party defendant.

Affidavits have been filed pro and con. The motions can all be considered together, as, for the most part, they substantially involve the same questions. It appears that the defendants, with perhaps one exception, compose the directory of the association or corporation known as the American Railroad Company of Porto Rico, Central Aguirre, Operator, and that the entry upon these estates consisted in the taking possession and use of a strip of land through them for a right of way for the railroad, and in all the defendants have done they have acted in this capacity.

Cividanes v. Deford.

It appears the Compañia de los Ferrocarriles de Puerto Rico had a franchise to construct a railroad over this route between the cities of Guayama and Ponce, and authority to transfer this franchise to the then contemplated corporation known as the American Railroad Company of Porto Rico, Central Aguirre, Operator; that the executive council of Porto Rico on July 21st, 1902, consented to the assignment of this franchise to Henry DeFord and others, and by them to the proposed corporation to be known as the American Railroad Company of Porto Rico, Central Aguirre, Operator. An organization of the latter company was effected in September, 1902, and the articles recorded in the October following. This was done under the Code of Commerce; and it is claimed that its provisions were not then in force by reason of the corporation law of March 1st, 1902, enacted by the Porto Rican legislature, and which provides for the organization of corporations, providing in § 33 (and which is § 64 of the Civil Code of Porto Rico) that all laws in conflict with its provisions are hereby repealed; but § 4 of this act (and which is § 35 of the Civil Code) expressly provides that no railroad company or other company needing the exercise of the right of eminent domain shall be organized under it. This left the prior existing law upon this subject in force. It cannot well be considered that the legislature of Porto Rico, by this corporate act, repealed all former existing laws upon the subject, and reserved to itself the right to legislate for the organization of such corporations as might require the exercise of the power of eminent domain. It certainly did not do so in express terms, and repeals by implication are not favored.

The Code of Commerce of 1885, articles 116, 151, and 184, authorized the formation of commercial associations, and the manner in which it was to be done. They included railroad

Cividanes v. Deford.

corporations. It also provided in article 3 for the exercise of the power of eminent domain for a public utility, and the road in question is shown to be one. It, however, provided that the final appropriation of real property for such purposes should not be had without first paying the indemnity; and article 349 of the Civil Code of Porto Rico says: "No one shall be deprived of his property except by competent authority and with sufficient cause of public utility, always after the proper indemnity. If this requisite has not been fulfilled the judges shall protect, and in a proper case replace, the condemned party in possession."

The law of eminent domain applicable to Porto Rico also provided in article 55 for what is known as "temporary occupation" of lands for a short time, in order to erect stations, temporary roads, etc., for works of public utility, and looking to the ultimate condemnation of the same for the projected use.

Proceedings were had in this instance for temporary occupation for twelve months. Indemnity for this was fixed, and offered to the complainants before the alleged trespasses, and, not being accepted, was paid into the public treasury.

The exercise of the power of eminent domain is a high one. It should always be accompanied with a strict conformity to law. It is one of the highest duties of a court to protect individual right.

Even if hardship and loss may result to others from want of means to transport their cane to mill, or from lack of employment, this does not authorize the taking of complainants' property for use as a railway route, in an unlawful way.

It is immaterial, however, to consider whether the proceedings had in this instance were in all respects regular, owing to the conclusion the court has reached upon the question of laches. Before considering it, it is proper to notice some other objections

Cividanes v. Deford.

raised by the defendants. It is urged that the bill fails to show this court has jurisdiction. It, however, avers that the continuance of the alleged trespasses will result in damage to the amount of many thousands of dollars; also that the complainants are Spanish subjects, and, being foreigners, this court has jurisdiction under § 3 of the act of Congress of March 2d, 1901. This question was determined in the case pending in this court of the Compañia Anonyma de la Luz Electrica de Ponce versus the Ponce Railway & Light Company, in an opinion delivered on March 20th, 1903.

It is also urged that the defendants being solvent, there is an adequate remedy at law, and therefore equity should not interfere. Wherever, however, trespasses go to the destruction of the substance of an estate, and cannot well be measured in damages, or are of a continuing character, equity will interfere. If it be a single trespass and temporary in its nature and effect, then, of course, the remedy at law is adequate; but equity will interfere to avoid a repetition of action and a multiplicity of litigation. United States Free Hold Land & Emigration Co. v. Gallegos, 32 C. C. A. 470, 61 U. S. App. 13, 89 Fed. 769; Story, Eq. Jur. § 928.

The beginning of the trespasses complained of was on December 15th, 1902. This bill was not filed until January 19th, 1903, or over one month after the commencement of the injury. It was a quasi public work, and one which, from its nature, the complainants were bound to know would likely be done quickly, and at much expense. They must have known, or, at least, could speedily have ascertained, who the parties were, moving in the matter. In fact, it was of public record. The defendants appear to have acted in good faith in entering upon the lands and in expending large sums of money. Efforts were made to reach an agreement with the complainants for the con-

struction of a road over these lands prior to the proceeding for temporary occupation. There is some evidence that the complainant Manuel Cividanes consented to the occupation; but this is denied by him, and it seems unlikely he did so in view of the protest which he filed with the alcalde. But this was not sufficient upon the part of the complainants. If they intended the land should not be taken for a right of way, and that the alleged trespasses should not continue, they should have acted promptly, and enjoined their continuance without delay. They had no right to not thus act, and permit not only individual means and labor to be largely expended, but to also permit the public to become thereby interested in the work. It is shown that when the bill was filed the work had so far progressed that much money and labor had been expended upon the route over the lands in contest. The complainants had known as early as October, 1902, that the intention was to construct the road. They had notice of the various steps to that end; and although the work was begun, and progressed for nearly a month, they took no step to stop it, and it is now, and has been for some time, in operation, transporting freight and passengers from one place to another over the land in contest.

The question of laches upon the part of a complainant seeking equitable relief may be raised by demurrer. Bryan v. Kales, 134 U. S. 126, 33 L. ed. 829, 10 Sup. Ct. Rep. 435.

Each case where a question of laches is presented must depend upon its own circumstances. The court does not pretend to intimate that a corporation, whether a railroad company or otherwise, is not responsible in case of trespass. In fact, as important privileges are usually conferred upon it, it should be confined strictly within them, and held responsible for all infractions of law. But, if one, with knowledge of the progress of a public work, lies by and permits the other party to expend

Cividanes v. Deford.

money, and the public to become interested, without preventing the occupation, in fairness his conduct may be regarded as acquiescence; and if an injunction be sought against the continuance of the occupation under such circumstances, the court should be slow to grant relief. If the right to injunctive relief be doubtful, he should be left to his remedy at law for the damages he may have sustained. If, in this instance, the complainants had at once begun injunctive proceedings, the defendants might have concluded to abandon their proposed route over the land in contest. If an injunction be now granted, the company must pay whatever the complainants may ask, or abandon the work and lose their money. Under the circumstances the court should not so place them,—especially when the complainants have allowed the public to become interested. Equity aids the vigilant. The time when one asks relief is often to be considered in determining the right to it. Between individuals the matter in issue is of private concern; but where a corporation is charged with public duties, it becomes more,—the public is concerned; and the harsh remedies often applied between individuals should not be applied in such a case in seeking to recover land. If full justice can be done the owner, and the public interest at the same time be protected, it should be done. If an individual has a remedy at law for obtaining a fair compensation for land that is taken by a railroad, he will be compensated for his injury. If a railroad company enters and takes possession of land, expends money and labor in building a road over it, the public become interested; and if the owner stands by and does not prevent it when he could, he will be remitted to his other remedies for the injury, and not be permitted by injunction to stop the operation of the work which would affect the public interest. Thus, while no man's property can be taken by the exercise of the right of eminent domain, without

compensation, yet, if he permits a company charged with public duties to take possession of his land, build a road over it, and begin operating, he cannot then sue in ejectment. He must look to his remedy at law for compensation. Even the shortest time of acquiescence, if the work has been done in the meantime, may prevent him from asserting his claim so as to stop the work in which the public have become interested. He is restricted to his suit for damages; and when ascertained, equity would, no doubt, if necessary, place the property in a receiver's hands to enforce payment. In fact laches do not grow out of mere lapse of time; but the question is whether there has been such delay by the complaining party that the position of the parties has changed, and it would be inequitable to grant the relief sought. It was said by the Supreme Court in the case of Roberts v. Northern P. R. Co. 158 U. S. 1, 39 L. ed. 873, 15 Sup. Ct. Rep. 756. "So, too, it has been frequently held that if a landowner, knowing that a railroad company has entered upon his land, and is engaged in constructing its road without having complied with the statute requiring either payment by agreement or proceedings to condemn, remains inactive, and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages."

This being so, certainly injunctive relief should not be allowed in such a case. The above views are not only supported by the case above cited, but by the following: Penn Mut. L. Ins. Co. v. Austin, 168 U. S. 685, 42 L. ed. 626, 18 Sup. Ct. Rep. 223; Northern P. R. Co. v. Smith, 171 U. S. 260, 43 L. ed. 157, 18 Sup. Ct. Rep. 794; New York v. Pine, 185 U. S. 93, 46 L. ed. 820, 22 Sup. Ct. Rep. 592.

A court should readily consider laches and be slow to act

Cividanes v. Deford.

by injunction where a work of a public character has been undertaken at great expense and labor, and one having opportunity to prevent it has stood by and allowed it to be done. The circumstances of this case bring it within the rule indicated.

The motion for a temporary injunction is refused and that to dismiss the bill is sustained at the costs of the complainants.