UNITED STATES v. BUFFALO PITTS CO.

(Circuit Court of Appeals, Second Circuit. January 29, 1912.)

No. 139.

UNITED STATES (§§ 69, 127*)—"IMPLIED CONTRACT"—OBLIGATIONS "FOUNDED ON THE CONSTITUTION."

    A seller of a traction engine for use by the buyer in the performance of his contract with the government under the reclamation act (Act June 17, 1902, c. 1093, 32 Stat. 388 [U. S. Comp. St. Supp. 1909, p. 596]), who as mortgagee for the price remained the owner with right to possession for the failure of the buyer to pay at maturity the first note for the price, could, on the government taking possession, as authorized by section 7 of the act, of the contractor's machinery and completing the work, sue the government for the value of the use of the engine either on an implied contract to pay therefor, or on its constitutional obligation within the Tucker act (Act March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]), authorizing actions on claims founded on the Constitution or on contracts, express or implied.

    [Ed. Note.—For other cases, see United States, Dec. Dig. §§ 69, 127.*

    For other definitions, see Words and Phrases, vol. 4, pp. 3428–3431.]

    Noyes, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of New York.

Action by the Buffalo Pitts Company against the United States. There was a judgment for plaintiff, and defendant brings error. Affirmed.

John Lord O'Brian, U. S. Atty., and W. Palmer, Asst. U. S. Atty. White & Babcock (Edward P. White, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment of the Circuit Court sitting as a court of claims under the Tucker act of March 3, 1887 (24 Stat. 505), in favor of the plaintiff and against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the United States. The government had under the reclamation act of June 17, 1902 (32 Stat. 388), entered into a contract with the Taylor-Moore Construction Company to build the Hondo dam in connection with the Hondo project in New Mexico. Section 7 of that act provides:

"That where in carrying out the provisions of this act it becomes necessary to acquire any rights or property, the Secretary of the Interior is hereby authorized to acquire the same for the United States by purchase or by condemnation under judicial process, and to pay from the reclamation fund the sums which may be needed for that purpose, and it shall be the duty of the Attorney-General of the United States upon every application of the Secretary of the Interior, under this act, to cause proceedings to be commenced for condemnation within thirty days from the receipt of the application at the department of justice."

It was a condition of the contract that upon the Construction Company's default the government might take over the contract and possession of all the Construction Company's machinery delivered on the ground for the purpose of completing the work.

The plaintiff sold to the Construction Company a traction engine to be used in this contract, and the company executed a chattel mortgage thereon to the plaintiff to secure the payment of the price. June 7, 1905, upon the Construction Company's default, the government did rightfully take over the contract and all the company's property which included the Construction Company's interest in the traction engine as mortgagor. June 20, 1905, the plaintiff which as mortgagee was always the owner of the engine (6 Cyc. 985; Kitchen v. Schuster, 14 N. M. 164, 89 Pac. 261), became entitled to the possession of it because of the Construction Company's failure to pay the first note falling due that day. The government refused to deliver the engine to the plaintiff on its demand, continued to use it in the work, and the plaintiff, having notified the government of its title and right to compensation, took no further proceedings, if, indeed, any could have been taken against the United States in the matter. After the Hondo dam was completed, the government abandoned the engine, the plaintiff took possession of it, and began this action to recover the fair and reasonable value of its use. There was no need for formal proceedings in condemnation, and the rights of the plaintiff were not prejudiced by the omission of the government to take them. As Mr. Justice Brewer said in United States v. Lynah, 188 U. S. 445, 467, 23 Sup. Ct. 349, 356 (47 L. Ed. 539):

"This brings the case directly within the scope of the decision in United States v. Great Falls Manufacturing Company, supra [112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846], where, as here, there was no direction to take the particular property, but a direction to do that which resulted in a taking, and it was held that the owner might waive the right to insist on condemnation proceedings and sue to recover the value. It does not appear that the plaintiffs took any action to stop the work done by the government, or protested against it. Their inaction and silence amount to an acquiescence —an assent to the appropriation by the government. In this respect the case is not dissimilar to that of a landowner who, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute in respect to condemnation, is estopped from thereafter maintaining, either trespass or ejectment, but is limited to

a recovery of compensation. Roberts v. Northern Pacific Railroad, 158 U. S. 1, 11 [15 Sup. Ct. 756, 39 L. Ed. 873]; Northern Pacific Railroad v. Smith, 171 U. S. 260 [18 Sup. Ct. 794, 43 L. Ed. 157], and cases cited in the opinion."

The trial judge held as a matter of law that the refusal of the government to deliver possession of the engine to the plaintiff after its right to possession under the chattel mortgage accrued raised an implied promise to pay for its use. Section 1059, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 734), which defined the jurisdiction of the Court of Claims down to the passage of the Tucker act, so far as relevant reads as follows:

"Sec. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters: First. All claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, and all claims which may be referred to it by either House of Congress."

It is abundantly established by authority that under this section the court had no jurisdiction of claims arising out of tort. In United States v. Great Falls Manufacturing Co., 112 U. S. 645, 656, 5 Sup. Ct. 306, 311 (28 L. Ed. 846), the Supreme Court, speaking by Mr. Justice Miller, said:

"The making of the improvements necessarily involves the taking of the property; and if, for the want of formal proceedings for its condemnation to public use, the claimant was entitled, at the beginning of the work, to have the agents of the government enjoined from prosecuting it until provision was made for securing in some way payment of the compensation required by the Constitution—upon which question we express no opinion—there is no sound reason why the claimant might not waive that right, and, electing to regard the action of the government as a taking under its sovereign right of eminent domain, demand just compensation. Kohl v. United States, 91 U. S. 367, 374 [23 L. Ed. 449]. In that view, we are of opinion that the United States, having by its agents, proceeding under the authority of an act of Congress, taken the property of the claimant for public use, are under an obligation, imposed by the Constitution, to make compensation. The law will imply a promise to make the required compensation, where property to which the government asserts no title is taken pursuant to an act of Congress as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions founded 'upon any contract, expressed or implied, with the government of the United States.'"

He distinguished the case from Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010, on the ground that in it the government claimed the land it took as its own.

Assuming that the law applicable to the present situation is the same as it was before the passage of the Tucker act, we think the judgment of the court below was right. The government did not claim any title to the engine nor deny the plaintiff's title. It claimed the right to continue the use of the engine in the public work. This right it had as sovereign and under the seventh section of the reclamation act, subject to the duty of paying for the use and from this duty a promise to pay is to be implied as in United States v. Great Falls Manufacturing Co., supra.

The applicable provision of the Tucker act is this language of the first section:

"First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity or admiralty if the United States were suable.  *  *  * "

Mr. Justice Brown in Dooley v. United States, 182 U. S. 222, 224, 21 Sup. Ct. 762, 763 (45 L. Ed. 1074), pointed out the difference between this provision and section 1059, saying:

"The first section evidently contemplates four distinct classes of cases: (1) Those founded upon the Constitution or any law of Congress, with an exception of pension cases; (2) cases founded upon a regulation of an executive department; (3) cases of contract, expressed or implied, with the government; (4) actions for damages, liquidated or unliquidated, in cases not sounding in tort. The words 'not sounding in tort' are in terms referable only to the fourth class of cases."

Mr. Justice White delivered a dissenting opinion, in which Justices Gray, Shiras, and McKenna concurred, not involving this question at all. We may assume that, if Justice Brown did not speak for the whole court on this point, he did at least speak for Chief Justice Fuller and Justices Harlan, Brewer, and Peckham. However, in United States v. Lynah, supra, Mr. Justice Brewer delivered the opinion of the court, holding that, when the government takes property not claimed as its own, an implied promise to pay is raised. He followed United States v. Great Falls Manufacturing Co., supra, and reasoned as if the changed language of the Tucker act made no change in the law, saying at 188 U. S. 464, 23 Sup. Ct. 355 (47 L. Ed. 539):

"The rule deducible from these cases is that, when the government appropriates property which it does not claim as its own, it does so under an implied contract that it will pay the value of the property it so appropriates. It is earnestly contended in argument that the government had a right to appropriate this property. This may be conceded, but there is a vast difference between a proprietary and a governmental right. When the government owns property, or claims to own it, it deals with it as owner and by virtue of its ownership, and, if an officer of the government takes possession of property under the claim that it belongs to the government (when in fact it does not), that may well be considered a tortious act on his part, for there can be no implication of an intent on the part of the government to pay for that which it claims to own. Very different from this proprietary right of the government in respect to property which it owns is the governmental right to appropriate the property of individuals. All private property is held subject to the necessities of government. The right of eminent domain underlies all such rights of property. The government may take personal or real property whenever its necessities or the exigencies of the occasion demand. So the contention that the government had a paramount right to appropriate this property may be conceded, but the Constitution in the fifth amendment guarantees that when this governmental right of appropriation—this asserted paramount right—is exercised it shall be attended by compensation."

Mr. Justice Brown wrote a concurring opinion in which he declined to rest the judgment on an implied contract to pay, holding that the taking was a trespass in which there could be no waiver of the tort,

and that the government was obliged to pay under the fifth amendment whether the claim sounded in tort or not. Justices Shiras and Peckham held that the court had jurisdiction on both grounds. Mr. Justice McKenna took no part in the decision. Mr. Justice White for himself and Chief Justice Fuller and Justice Harlan dissented on grounds that did not involve this question at all.

We may at least assume that Justices Fuller and Harlan who concurred in the opinion of the Court in the Dooley Case, supra, agreed with Justices Shiras and Peckham, thus making a majority of the court that the construction of the Tucker act taken by Mr. Justice Brown was right.

Accordingly we think the judgment below right, whether it rested on an implied contract of the government to pay within the opinion of Mr. Justice Brewer in the Dooley Case or upon its constitutional obligation within the opinion of Mr. Justice Brown.

It remains only to distinguish two cases much relied upon by the government. Bigby v. United States, 188 U. S. 400, 23 Sup. Ct. 468, 47 L. Ed. 519, was an action for damages for personal injuries sustained by the plaintiff as the result of the negligence of a government servant in running an elevator in the post office building at Brooklyn. It was a pure action in tort, having absolutely nothing to do with the taking of private property. Hooe v. United States, 218 U. S. 322, 31 Sup. Ct. 85, 54 L. Ed. 1055, involved the taking of property by the Secretary of the Interior in direct violation of the act of Congress under which he acted. Of course, there could be no pretense that he was authorized by the United States to do what he did. There was no taking by the government and no promise to pay could be implied.

But, as interest cannot be recovered of the government except where specially allowed by statute, the court below is directed to strike out the amount included for interest, and the judgment so modified is affirmed.

NOYES, Circuit Judge (dissenting). There is a clear distinction between a governmental and a proprietary right. When the United States in the exercise of their sovereign authority appropriate private property, the Constitution guarantees compensation and the law implies a promise to pay, upon which the owner, waiving formal condemnation proceedings, may sue. But when the government uses property because it claims a title or interest in it, it asserts a proprietary right. If this be asserted wrongfully,—if the officers of the government take possession of property in which it has no interest —a tort is committed, but there can be no implication that the government promises to pay for a thing which it claims to be entitled to without paying.

Stated in another way: When the government takes property in a manner equivalent to informal condemnation proceedings, a recognition of the duty to make compensation must be presumed and may amount to an implied promise to pay. In such a case there is no difficulty in treating the relations of the sovereign and the property own-

er as contractual.   But when the government uses property which it claims to own or have an interest in, it occupies the position of a private person asserting a private right and just as an individual who takes property which does not belong to him is liable in trespass or trover and not in contract, so whatever liability attaches to the government officers for a wrongful use is founded in tort.   There is nothing to form the basis of a contract.

To illustrate: If the officials had seized this engine because it was available and was a necessary instrument for the prosecution of the public work, there would have been an appropriation by governmental authority from which the law would imply a promise to make payment—such promise being merely the legal recognition of a conceded obligation.   But if the officials had used the engine because they claimed that the government had a title giving it the right to use it, there could be no such implied promise even if in fact it had no title, because in such a case the use would be a disclaimer of any accountability therefor.   There would be no meeting of minds.

The difficulty with the opinion of the majority, as I view it, is not in failing to recognize, but in failing to apply, these principles.   The opinion seems almost to beg the whole question by stating, without discussion, that "the government did not claim any title to the engine or deny the plaintiff's claim."   If the government did not make a claim of proprietary right and asserted only its governmental authority to take and use the engine in the public work, I certainly could not, consistently with that which has just been written, dissent.   But as I read the testimony, the very opposite conclusion to that stated by the majority must be drawn from it.   It seems to me entirely clear that the government officials used the engine because the contract with the defaulting contractors gave the government the right to use the machinery upon the works and because they claimed that the rights of the government thereunder were superior to those of the plaintiff as the holder of a chattel mortgage.   Thus the chief engineer, to whom the matter was referred, claimed in a letter to the plaintiff that the engine, having been delivered and used upon the works by the contractors before the chattel mortgage was filed, was subject to the provisions of the contract.   So the district engineer as a witness stated that he claimed the engine under the contract.   There is substantially nothing upon the part of the plaintiff to contradict this testimony.

The record is, in my opinion, insufficient to determine whether the contract provision authorizing the government to take possession of the property of the contractors and continue the work, gave it rights with respect to the engine in question superior to those of the plaintiff as the holder of a chattel mortgage thereon.   But upon such a record showing the claims made in behalf of the government of its rights under the contract, I am wholly unable to comprehend how it can be denied that the government asserted a proprietary right or can be held that it acted in its sovereign capacity by proceedings equivalent to those of eminent domain.

In my opinion the judgment should be reversed.