Williams, Judge,
delivered the opinion:
The plaintiff brings this suit to recover compensation, for use and damage, of fifteen motor trucks owned by it, which trucks it is alleged were taken by the Government on March 14, 1928, and used in connection with road work being done for the Government on the Yorktown Mine Depot, at Yorktown, Virginia.
The findings disclose that one L. M. Johnston had a contract with the Navy Department for certain road construction on the Government reservation at Yorktown, Virginia, known as the Yorktown Navy Mine Depot. The contract provided that upon default on his part in the performance of the contract all material and equipment brought on the job by him should be retained by the Govermnent and used in the completion of the work under the contract. Johnston was defaulted and his contract was on March 14, 1928, declared forfeited by the Government. Whereupon the Government notified his bondsmen and required them to complete the contract. The bondsmen thereupon made a contract with Jamison Bros., Inc., to complete the contract. At the time Johnston’s contract was declared forfeited, the Bureau of Yards and Docks, representing the Navy De *713 partment, directed the commandant at the Navy mine depot to take possession of all the equipment and material Johnston had on the job at the time, for use in completing his contract. The commandant pursuant to this direction took possession of such material and equipment and permitted it to be used by Jamison Bros., Inc., until Johnston’s original contract had been completed. Included in such equipment were fifteen International motor trucks which Johnston had purchased from the International Motor Truck Agency, Inc., to which company he had upon delivery of the trucks executed conditional sales contracts and conditional sales notes in the sum of $21,000. The conditional-sales notes and contracts were duly assigned by the International Motor Truck Agency, Inc., to the plaintiff, which conditional sales notes and contracts and their assignment to the plaintiff had been duly recorded at Alexandria, Virginia. Johnston was in default in making payments on his notes prior to March 14, 1928, and the plaintiff was, under the terms and conditions of the said notes and contracts, entitled to the possession of the trucks. Suit had been instituted by the plaintiff to obtain possession of the trucks, and was pending at the time Johnston’s contract was declared forfeited. Immediately following the forfeiture of Johnston’s contract he was adjudged a bankrupt by the United States District Court for the Eastern District of Virginia. The trustees in bankruptcy made a demand upon the representative of the commandant at the mine depot for the material and equipment left by Johnston on the job and were informed that all such equipment had been taken over by the Government under the provisions of the contract and would be used in completing the work covered by the contract. Shortly thereafter an order and decree was entered by the district court, in which the trucks in question were adjudged to be the property of the plaintiff, and the trustee in bankruptcy was directed to deliver possession of them to plaintiff. This order was presented to the Bureau of Yards and Docks by the plaintiff with a request that the commandant at the mine depot at Yorktown be directed to turn the said trucks over to the plaintiff. The trucks were *714 not delivered to the plaintiff but were retained at the mine depot by the defendant and were used by Jamison Bros., Inc., until Johnston’s original contract was completed.
On May 25, 1928, the plaintiff in a formal letter to the Bureau of Yards and Docks stated in detail the circumstances under which the Government was retaining possession of. the trucks in question and served notice that it would expect compensation for the use of the said trucks by the Government.
The plaintiff contends that the taking and using of its property, under the circumstances and in the manner stated, because of the constitutional obligation embodied in the fifth amendment to the Constitution, creates an implied promise on the part of the defendant to compensate it for such taking and use.
The defendant on the other hand contends that the refusal of the agents of the Government to deliver the trucks to the plaintiff, upon demand being made for them and permitting them to be used by Jamison Bros., Inc., in completing the work under Johnston’s contract, were tortious acts for which the Government is not liable. It also contends that the defendant in fact did not take possession of the said trucks, nor use them, but that they were, at the time Johnston defaulted in his contract, in the possession of Jamison Bros., Inc., and were thereafter exclusively used by such company, and that the plaintiff must look to Jamison Brothers, Inc., for compensation.
The plaintiff cites in support of its contentions, United States v. Lynah, 188 U. S. 445; McKeever v. United States, 14 C. Cls. 396; United States v. Palmer, 128 U. S. 262; and United States v. Buffalo Pitts Company, 234 U. S. 228.
The Buffalo Pitts ease seems to be in all essential features practically on all fours with the instant case. In that case it was held that where the Government in the exercise of its rights takes and uses property, the ownership of which it concedes to be in another, the United States under the fifth amendment impliedly promises to pay therefor. The plaintiff, a New York corporation, in that case had sold a certain tractor engine to the Taylor-Moore Construction Company, which company had a contract with the Govern *715 ment to perform certain work undertaken by the Beclamation Service of the Department of the Interior. The Taylor-Moore Construction Company had given a chattel mortgage on the said engine to the plaintiff and had defaulted on its payments thereon. The Taylor-Moore Construction Company defaulted in its contract, and under a clause in the contract, similar to the one in the Johnston contract herein, the Government took over all of the material and equipment placed on the job by the Taylor-Moore Construction Company, including the tractor engine aforesaid, and used such material and equipment in completing the contract. The plaintiff, the holder of the said chattel mortgage, notified the agents of the Government of the execution and filing of the chattel mortgage, and that by reason of the default of the Taylor-Moore Construction Company in making its payments in accordance with the terms of the said chattel mortgage, the plaintiff claimed the ownership of the said engine. The Government knew of the existence of the said chattel mortgage and did not dispute the validity thereof nor deny the plaintiff’s ownership of the engine, but refused to deliver it to the plaintiff on demand therefor being made.
The court held that the retention and use of the engine by the Government under these circumstances raised an implied promise on its part to compensate the plaintiff therefor. The court said (p. 234-236) :
“ Under such circumstances we think the former decisions of this court, recognizing the general principles of justice which give rise to implied obligations, and enforcing the right of compensation when private property is taken for a public use, require the Government to make compensation for the use of this engine, and that the facts bring this case within United States. v. Great Falls Mfg. Co., 112 U. S. 645, and United States v. Lynah, supra. In the latter case, where it was sought to recover damages for the alleged taking of the plaintiff’s property in the construction of a dam which had the effect to overflow lands belonging to him and destroy their value, after an extended review of the previous cases in this court, it was said (p. 464) :
“' The rule deducible from these cases is that when the Government appropriates property which it does not claim as its own it does so under an implied contract that it will *716 pay the value of the property it so appropriates. It is earnestly contended in argument that the Government had a right to appropriate this property. This may be conceded, but there is a vast difference between a proprietary and a governmental right. When the Government owns property, or claims to own it, it deals with it as owner and by virtue of its ownership, and if an officer of the Government takes possession of property under the claim that it belongs to the Government (when in fact it does not) that may well be considered a tortious act on his part, for there can be no implication of an intent on the part of the Government to pay for that which it claims to own. Very different from this proprietary right of the Government in respect to property which it owns is its governmental right to appropriate the property of individuals. All private property is held subject to the necessities of Government. The right of eminent domain underlies all such rights of property. The Government may take personal or real property whenever its necessities or the exigencies of the occasion demand. So the contention that the Government had a paramount right to appropriate this property may be conceded, but the Constitution in the fifth amendment guarantees that when this governmental right of appropriation — this asserted paramount right — is exercised it shall be attended by compensation.’
“ (P. 465) ‘ * * * Whenever in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor. Such is the import of the cases cited as well as of many others.’
“ * * * In the present case the Government had the right to contract for this work under statutory authority and to acquire property necessary to that end. Under the contract it might take possession of the construction company’s property, and, it may be conceded, finish the contract with such property, but it had no right to use the property of others without compensation, and in this case it did not assume to do so. The mortgagee had a distinct right in the property which had accrued to it before the property was entered upon, and was authorized to take and hold the same as against the attempted transfer of the mortgagor. While the Government claimed the right to thus take and use the property, it nevertheless held it without denying the right of the owner to compensation. When it takes property under such circumstances for an authorized governmental use it impliedly promises to pay therefor. This accords with the principles declared in the previous cases *717 in this court and arises because of the constitutional obligation embodied in the fifth amendment to the Constitution of the United States, guaranteeing the owner of property against its appropriation for a governmental use without compensation.”
The only distinction between the Búfalo Pitts ease and the instant case is that in the former case, after taking possession of the property, the Government itself used such property in completing the work of the defaulting contractor, while in the instant case the Government after taking possession of the plaintiff’s property turned it over to another and permitted its use by him in completing the work on the forfeited contract.
In each case the Government took possession of property which it did not own or claim to own, refused upon demand of the rightful owners to deliver possession to them, and used the property so taken in Government work upon projects which had been authorized by Congress. In the one case the property taken was used directly by the Government itself, in the other the Government permitted it to be used by another. The distinction is not material. International Paper Co. v. United States, 282 U. S. 399.
Possession of the trucks in question was taken by the officials at the mine depot at Yorktown, on written orders issued by the Bureau of Yards and Docks. The trucks were at that time located on the Government reservation and were being used in prosecuting work on a Government contract authorized by Congress. The order of the Bureau of Yards and Docks, under the circumstances, amounted to a requisition of the plaintiff’s property for the use of the Government. The order directing the trucks to be taken over, stated such action was taken because of the provision in Johnston’s contract authorizing it, and that they were to be used in completing the work under his forfeited contract.
The facts in this case are distinguishable from the facts in Ball Engineering Company v. J. G. White & Co., 250 U. S. 46, cited by the defendant. While the Government in that case took possession of property under circumstances similar to those existing in the instant case and under a *718 similar annulment clause of the contract, it is specifically pointed out in the opinion that the Government in that case did not concede the rightful owners title thereto.
The same is true in Tempel v. United States, 248 U. S. 121, 130, where the court, holding the taking of private property was tortious, after quoting from United States v. Lynah, supra: “ Whenever in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor,” said:
“ But in the case at bar, both the pleadings and the facts found preclude the implication of a promise to pay. For the property applied to the public use is not and was not, conceded to be in the plaimtiff.” (Italics supplied.)
As hereinbefore pointed out the defendant in this case took property belonging to the plaintiff, refused to make return thereof when demand was made by the rightful owner, turned it over to Jamison Bros., Inc., to be used by them in completing an authorized Government contract, returning such property to the plaintiff only when the contract had been completed. The defendant neither at the time of the taking of the property nor during its subsequent use made a claim of ownership in such property and did not at any time question the plaintiff’s ownership of the same.
The plaintiff under these circumstances is entitled to recover compensation for the use of the said property. The value of such use is fixed in the findings to be the sum of $12,500.
Judgment is therefore ordered to be entered in favor of the plaintiff in the amount of $12,500. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.
memorandum by the court on motion eor new trial
The deefndant moves the court to grant a new trial herein and to modify and amend the conclusions of law and judgment of the court in its opinion of June 1, 1981, by striking therefrom the allowance of interest on the judgment awarded to plaintiff.
*719 The plaintiff’s right to recover in this case is upon an implied contract of the Government to pay for the use of the trucks and does not arise as a result of the exercise by the United States of its right of eminent domain under the Fifth Amendment. The allowance of interest on the judgment heretofore rendered was therefore erroneous and the motion of the defendant is allowed. The conclusion of law and the judgment of the court are amended by striking therefrom the allowance of interest. In all other respects the judgment of the court as originally entered remains unchanged. Section 177 of the Judicial Code, U. S. C., title 28, section 284; United States v. North American Transportation & Trading Co., 253 U. S. 330; United States v. Buffalo Pitts Co., 234 U. S. 228, affirming 193 Fed. 905; Seaboard Air Line Ry. Co. et al. v. United States, 261 U. S. 299 (see reference on page 305 to United States v. North American Transportation & Trading Co., supra).