STODGHILL v. THE C., B. & Q. R. Co.

1. **Damages:** CONTINUING INJURY: RECOVERY FOR. Where the erection of an embankment for the track of a railway closed the natural channel of a stream and diverted the water from a tract of land, it was held that the injury caused to such land thereby was a permanent one, for which damages might be at once fully recovered.

2. ——: ——: RES ADJUDICATA. A judgment recovered in an action for such injury would be a bar to future actions to recover for a continuation of the embankment, or for its abatement. The fact that in such action the jury were erroneously instructed not to take into account any future injury by reason of the maintenance of the embankment would not alter the effect of the judgment as an adjudication of all questions which were, or ought to have been, tried in the action.

*Appeal from Wapello Circuit Court.*

TUESDAY, APRIL 20.

CHRISTOPHER STODGHILL was the owner of a farm of some four hundred and eighty acres in Wapello county. Part of

said farm consisted of a tract of twenty-nine acres of creek or pasture land. The defendant's right of way for its railroad was located along the north line of said tract. The natural channel of North Avery Creek ran across the right of way upon said tract, meandered through it, and recrossed the north line of the land, and the right of way. When the railroad was constructed, bridges were built across the creek which spanned the channel, and did not obstruct the passage of the water in the stream, nor divert it from where it was wont to flow. In 1874, the defendants cut a channel on the north side of their right of way, and filled in the bridge where the stream entered plaintiff's land, with earth, which diverted the stream into the new channel entirely, except as the water backed through a culvert at the point where the water recrosses the right of way; the said bridge at the last named point having been previously removed, a culvert there constructed, and the stream filled in at this point, except the culvert aforesaid.

Christopher Stodghill commenced an action against the defendant for damages to his land by reason of the diversion of the stream. He recovered a verdict and judgment for one dollar and costs. The case was affirmed upon appeal to this court. See *Stodghill v. C. B. & Q. R. Co.*, 43 Iowa, 26.

Said Stodghill died in the year 1876, and by his last will and testament, which was duly admitted to probate, he devised the said twenty-nine acres with other of his lands to the plaintiff. This action was commenced in February, 1877, to recover damages for continuing to divert the water from the natural channel of said creek, and for a judgment directing the abatement and removal of the embankments in the original channel.

There was a trial by the court without the intervention of a jury, and a judgment was rendered for plaintiffs for one dollar actual damages, and seventy-five dollars exemplary damages, and an order was made requiring the defendant to

abate and remove said obstructions from the natural channel of the creek. Defendant appeals.

*Stiles & Lathrop*, for appellant.

*Wm. McNett* and *A. B. Hendershott*, for the appellee.

ROTHROCK, J.—I. When the earth was deposited in the channel of the creek and raised to a sufficient height to cover over the bridge and make a solid embankment upon which to lay the railroad track, the water in the creek was at once turned into the new chan-nel. The principal question in the case is whether the judg-ment for damages in favor of Christopher Stodghill was a full adjudication for all injuries to the land, not only up to the commencement of that suit, but for all that might there-after arise.

In *Powers v. Council Bluffs*, 45 Iowa, 652, the question being as to what is a permanent nuisance, it was held that where it is of such character that its continuance is necessarily an injury, and that when it is of a permanent character that will continue without change from any cause but human labor, the damage is original, and may be at once fully esti-mated and compensated; that successive actions will not lie, and that the statute of limitations commences to run from the time of the commencement of the injury to the property. That was a case where the plaintiff sought to recover dam-ages against the city for diverting the natural channel of a stream, called Indian Creek, by excavating a ditch in a street in such a manner that it widened and deepened by the action of the water, so as to injure plaintiff's lot abutting upon said street. The same rule was recognized in *Town of Troy v. Cheshire Railroad Co.*, 3 Foster (N. H.), 83. In that case the defendant constructed the embankment of its railroad upon a part of a highway. The action was by the town to recover damages. The plaintiff claimed that it was entitled to recover for the damages for the permanent injury. The

*L. DAMAGES: continuing in-jury: recov-ery for.*

court said: "The railroad is in its nature, design and use, a permanent structure, which cannot be assumed to be liable to change; the appropriation of the roadway and materials to the use of the railroad is, therefore, a permanent diversion of that property to that new use, and a permanent dispossession of the town of it as the place on which to maintain a highway. The injury done to the town is, then, a permanent injury, at once done by the construction of the railroad, which is dependent upon no contingency of which the law can take notice, and for the injury thus done to them they are entitled to recover at once their reasonable damages."

The case at bar is a much stronger illustration of what is a permanent nuisance or trespass for which damages, past, present, and prospective, may be recovered, than *Powers v. Council Bluffs*. In this case the damages to the whole extent were at once apparent. The water was diverted from the natural channel as soon as the embankment was raised to a sufficient height to turn the current into the new channel. The injury to the land was then as susceptible of estimation as it ever afterwards could be, and without calculating any future contingencies. In the other case, when the water commenced to flow in the new channel the plaintiff's lots were not injured. It required time to wash away the banks and work backward before the injury commenced. It is not necessary to dwell upon this question. The rule established in *Powers v. Council Bluffs, supra,* is decisive of this case. See, also, *Chicago & Alton R. R. Co. v. Maher,* Supreme Court of Illinois, Chicago Legal News, July 5, 1879. Counsel for appellee contend that the railroad embankment is not permanent because it is liable to be washed out by freshets in the stream, and cannot stand without being repaired. There is no evidence in this record tending to show that the embankment is insufficient to accomplish the purpose for which it was erected; that is, to make a solid railroad track and divert the water into the new channel. One witness testified that it is from sixteen to eighteen feet high. We will not presume

that the defendant was guilty of such a want of engineering skill as not to raise its embankments so that they will not be affected by high water. It seems to us that a railroad embankment, of proper width and raised to the proper height, is about as permanent as anything that human hands can make. Before leaving this branch of the case, it is proper to say that the acts complained of were done within the limit of the defendant's right of way, and the injury, if any, to the plaintiff's land, was consequential. The defendant did not enter upon plaintiff's land to take a right of way for its railroad, and Christopher Stodghill did not bring his action to recover upon that ground. As we have a statute providing for proceedings to condemn the land necessary to be taken for right of way for railroad purposes, it may be that the mode of ascertaining the damages prescribed by the statute must be pursued. See *Daniels v. C. & N. W. R. R. Co.*, 35 Iowa, 129. That question, however, is not in this case, and we only refer to it lest we may be misunderstood.

Christopher Stodghill, in his petition in the former action, averred that the diversion of the stream from its natural course across said land perpetually deprived him of the use thereof, to his great damage in the prosecution of his business, and in the depreciation in the value of his said farm and pasture lands, and he claimed damages in the sum of $499. The court instructed the jury in that case that they were not to consider the question in regard to any permanent damage to the land, for the reason that the plaintiff had the right to institute other suits to recover damages sustained after the commencement of the action.

2. ——: ——: res adjudicata.

But the plaintiff claimed damages generally, and by his pleadings he and those holding under him must be bound. Indeed, we do not understand counsel for appellee to contend otherwise. The damages being entire and susceptible of immediate recovery, the plaintiff could not divide his claim and maintain successive actions. The erroneous instructions of

the court to the jury did not affect the question.    It was the duty of the plaintiff to have excepted and appealed.    " An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided, as incident to or essentially connected with the subject-matter of litigation.    Freeman on Judgments, Sec. 249.    And, see *Dewey v. Peck*, 33 Iowa, 242.    *Schmidt v. Zahensdorf*, 30 Iowa, 498.

The foregoing considerations dispose of the case, and it becomes unnecessary to examine or determine other questions discussed by counsel.

REVERSED.