The Evansville and Terre Haute Railroad Company *et al. v.* Nye.

Filed Jan. 26, 1888.

---

No. 12,951.

THE EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY ET AL. *v.* NYE.

RAILROAD.—*Ejectment.—Right of Way.—License.—Occupancy Under.—Damages.—Remedy.*—Where a railroad company enters upon land without the consent of the owner, but under a subsequent parol license continues to occupy and use it, and completes its road over the same, and operates it for many years, and continues to operate it, an action in ejectment to recover the land will not lie, although no compensation has been paid, the proper remedy being an action for compensation by way of damages.

SAME.—*Chose in Action.—Sheriff's Sale.—Statute of Limitations.*—In such case, the right to recover compensation is a chose in action, which would not pass to a purchaser of the land at a sheriff's sale, and, if not assigned and not barred by the statute of limitations, can only be enforced by the original owner.

From the Parke Circuit Court.

*A. Iglehart, J. E. Iglehart, E. Taylor, J. G. Williams, A. F. White* and *E. Hunt,* for appellants.

*D. H. Maxwell* and *H. Daniels,* for appellee.

| 113 | 223 |
| 113 | 584 |
| 114 | 200 |
| 115 | 5 |
| 115 | 31 |
| 116 | 259 |
| 113 | 223 |
| 128 | 83 |
| 113 | 223 |
| 131 | 182 |
| 113 | 223 |
| 135 | 97 |
| 113 | 223 |
| 153 | 32 |
| 113 | 223 |
| 170 | 59 |

HOWK, J.—In this case, Margaret J. Nye, as plaintiff, sued the Evansville and Terre Haute Railroad Company and the Terre Haute and Indianapolis Railroad Company, as defendants, in a complaint of one paragraph. The suit was commenced on the 4th day of November, 1882, and in her complaint appellee alleged that she was the owner in fee and entitled to the possession of a strip of land particularly described, in Parke county, containing about two-thirds of an acre, which the appellants wrongfully and without right detained and kept her out of the possession of. Wherefore, etc.

Appellants, severing in their defence, answered by general denials of the complaint. The issues joined were tried by a jury, and a verdict was returned for appellee that she was the owner and entitled to the possession of the real estate in controversy, and had sustained damages in the sum of $128 for the use and detention thereof. Over the separate motions of the appellants for a new trial, the court rendered judgment against them for appellee upon and in accordance with the verdict.

Separate errors are assigned here by the appellants upon the overruling of their separate motions for a new trial. Substantially the same causes for a new trial were assigned by each of the appellants, in their separate motions therefor. In their respective briefs of this cause, the learned counsel of each of the appellants have made substantially the same points, and discussed substantially the same questions. Whatever we may say in this opinion, therefore, may be regarded as equally applicable to and decisive of the points and questions made and discussed by and on behalf of each and both of the appellants.

It is necessary, we think, to a proper understanding of the questions in the case and of our decision thereof, that we should first give a summary at least of the evidence in the record. There is not much conflict in the evidence, and it was substantially as follows:

The Evansville and Terre Haute Railroad Company *et al. v.* Nye.

It was admitted, for the purposes of the trial of this cause, that in 1860, at the date of the entry hereinafter mentioned upon the real estate in controversy, one William H. Nye was the owner of such real estate, and that, on January 12th, 1880, Margaret J. Nye took a deed thereof from J. Perry Nye and wife, who had purchased the same at sheriff's sale on a foreclosure proceeding against William H. Nye and plaintiff herein, in the court below, in 1879; that, in 1860, the Evansville and Crawfordsville Railroad Company made its survey and entered upon such real estate for the purpose of building its railroad, and in December, 1860, such road was completed thereon, and such real estate had been continuously, openly and notoriously occupied by such railroad, and the same had been continuously operated, from December, 1860, to May, 1885, by the agents, servants and rolling stock of the Evansville and Crawfordsville, afterwards and at the commencement of this suit known by its present corporate name of the Evansville and Terre Haute Railroad Company, or of the Terre Haute and Indianapolis Railroad Company, and other railroad companies, paying rent therefor to the Evansville and Crawfordsville Railroad Company, by that or its subsequent name. Plaintiff reserved the right to prove, if she could, the character and circumstances under which said entry took place, and that the said possession was not exclusive.

William H. Nye, a witness for plaintiff, testified as follows: "In 1860, the Evansville and Crawfordsville Railroad Company sent its engineers to make a survey for its railroad on the land described in the complaint. At the time, the land was fenced in. They threw down the fence and entered upon the land, cut and plowed it, cut down some apple trees, and built their grade and laid their track. I protested at the time to their doing so without permission. I saw General Steele, who was general manager of the railroad extension, and made protest to him. He said they

wanted to go on with the work; that they were poor, but would fix it all right; that I should be paid what the land was worth. Afterwards, I spoke to the railroad authorities about settling for the land. I spoke once to Mr. Ingle, president of the road, and he suggested an arbitration. There was an agreement to arbitrate.

"Question by counsel for plaintiff: State whether an arbitration was had or not. Question objected to by counsel for defendants, for the reason that the record of the arbitration would be the best evidence of whether an arbitration was had; but the objection was overruled, and the witness was permitted to answer the question, to which ruling the defendants at the time severally excepted, and the witness answered as follows:

"An arbitration was had; arbitrators were agreed upon. I selected Isaac J. Silliman, the railroad selected George W. Sill, and these two selected the third man, Levi Sidwell. Silliman and Sill are now dead. Silliman died in 1867, and Sill in 1884, the latter since the commencement of this suit. These arbitrators viewed the premises, and awarded me $1,000 damages. This sum has never been paid. It was further agreed that the finding of the arbitrators should be made a rule of court, and each gave bond to that effect. The papers were brought into court, and the railroad company objected to their being filed or entry of judgment for the amount of the award, and the objection was sustained on some technical ground, and no judgment was entered. J. M. Allen, Esq., was attorney for the railroad company. I have looked for these papers in the clerk's office but can not find them. The last time I saw them they were in the hands of Mr. Allen, in the court-room. There is no record of the matter in the clerk's office, and there was no action taken on the arbitration. This arbitration was in the latter part of 1865. Within two hours after the case was disposed of, I went to the court-room for the papers and did not find them, and the clerk made search for them and could not find them.

After a service·of one and one-half years in the clerk's office, as deputy clerk, I made a thorough search for the papers in the office, but could not find them.

" Whereupon, the defendants and each of them objected to further testimony touching said arbitration, and moved the court to strike out all the testimony of the witness in relation ·thereto, for the reason, *first*, that the evidence of the witness disclosed that a competent court decided that the arbitration was a nullity, and, this being so, the proceedings were void for all purposes, and *second*, that the testimony was irrelevant and immaterial, and *third*, that the testimony did not tend to show that plaintiff was then claiming the title or possession of said land, but that said arbitration related solely to an amount of damages claimed for land already appropriated and in use for railroad purposes by the Evansville and Crawfordsville Railroad Company, and not to any claim for the title or possession thereof. But the court overruled said objection and motion, to which ruling the defendants, and each of them, at the time excepted. Said witness testified further, as follows :

" Nothing has been done about the arbitration since 1865. About a year before the commencement of this action I commenced corresponding with Mr. Mackey, superintendent of the railroad, in regard to settlement, but could not get the claim settled. The real estate lies in the west half of the southeast quarter of section 7, in Parke county, Indiana, and all lies south of the road running across the track, and runs south about 300 feet. There are two side-tracks on the land. There are about 750 feet in the main and two side-tracks. There is a platform 150 feet long and 12 feet wide on west side of the main track. I built a little house on the land in 1872 west of the platform 4 feet. This was used for a lunchstand, and used the platform in front; the railroad company did not object to this. My son used this house for a year and one-half; he then rented it for about six months. This house reached over the ditch on to the grade; probably one-fourth

The Evansville and Terre Haute Railroad Company *et al. v.* Nye.

of the house is on the railroad grade. The ditch passes under the platform and under part of the house. After the party to whom my son rented the house gave it up, the railroad company wanted it; rented it to the receiver of the Logansport Road, and road used it to store trunks in. Receiver paid me rent regularly; after that railroad refused to pay rent. I am a surveyor, and have had some experience in railroading. The 750 feet of track on the land—about one-seventh of a mile—were worth in rental value $200 to $250 per annum.

"Here it was admitted by counsel for defendants that notice in due form had been served upon defendants to produce the papers in the foregoing arbitration; and it was further ad-mitted by counsel that defendants had made diligent search for said papers, and that the same could not be found, and could not be produced upon the trial of this cause."

On cross-examination the witness William H. Nye testi-fied as follows:

"I saw the railroad men tear down the fences and enter on the land in controversy, and protested. I saw General Steele. He said let them go ahead and he would make it all right as to pay. I estimated the rental value as part of the entire line of railroad. If the real estate in controversy was cut off from the entire line of railroad, the rental value could not be as much as stated in my testimony in chief. It would have no value, except as vacant ground, in that event. I talked with Steele about the time they entered, in 1860. He was not officially connected with the railroad when he died. The receiver of the railroad paid an equivalent of $2.25 per month for the little house or lunch-room. There is a short platform from the door of the same to railroad platform, about four feet in length. After the Vandalia Company bought the road its agents came to me for the key of the lunch-room. I gave it to them and asked for rent, but they did not pay. I asked Judge Allen about three years ago about the arbitration papers, and he said he did not have

them, and knew nothing about them. The object of the arbitration was to ascertain and fix the amount of damages I had sustained by reason of my land being taken. I consented to the entry upon the land on condition that the road would pay me for the land, and it agreed to do so and went into possession."

Levi Sidwell, a witness for plaintiff, testified as follows:

" Question : Who selected you as arbitrator, if you were selected, and for what purpose were you selected? To which question the defendants objected, for the reason that said question was irrelevant and immaterial, and further that the testimony thus far showed that the arbitration was not completed and was not made a rule of court as agreed; that the circuit court decided it was illegal by reason of some informality or technicality, and the whole proceeding was a nullity. This being so, the arbitration, the contents of its papers, or the action or declarations of the arbitrators, could bind no one, and the purpose for which they were selected, or who selected them, could not be shown. But the court overruled the objection, to which ruling of the court the defendants, and each of them, by their counsel, at the time excepted. Whereupon the witness answered as follows: The railroad company selected me. We were selected for the purpose of placing a value on the property—the land—in dispute, for the use of the railroad tracks."

David Stith, a witness for plaintiff, testified as follows:

" Do you know the property in dispute? If so, what is the fair annual rental value of the same? Answer. I know the property in dispute. I can only answer as to the fair rental value of the property as a part of the whole road. Whereupon the defendants objected to the answer of the witness, and asked that it be struck out, and that the witness be not allowed to further answer the question upon said basis, for the reason that the measure of damages was the rental value of said property per year, unconnected with any other part of the railroad. But the court overruled said motion

and objection, and permitted the answer to stand, and the witness to answer further on said basis, to which ruling the defendants at the time excepted. And witness answered further: As part of the whole road, I would say the fair rental value per year would amount to $200."

On cross-examination the witness testified as follows: "The property standing alone, unconnected with the rest of the road, would be worth nothing except as pasture."

"Here it was admitted that the description of the land in the complaint is the same, and that the land is the same, as that mentioned in the written agreement hereinbefore set out."

Plaintiff here rested, and O. J. Innis, a witness for defendants, testified as follows:

"I know the property in dispute. Disconnected with any of the rest of the railroad, the property would be worth no more than ten or fifteen dollars per year, as fair rental value."

"Here it was admitted that the Terre Haute and Indianapolis Railroad Company, defendant, occupies the ground and tracks on the ground in controversy as tenant of the Evansville and Crawfordsville Railroad Company, defendant herein, and that the land is occupied for tracks, main and side, by railroad company, and telegraph poles." And this was all the evidence given in the cause.

We are of opinion that, upon the foregoing evidence, viewed in its most favorable light for the plaintiff, the verdict of the jury in her favor can not be sustained. It is true that the evidence shows without conflict that the Evansville and Crawfordsville Railroad Company entered upon the real estate in controversy, now owned by plaintiff, and then by her husband, William H. Nye, and built its main and side-tracks on and over the same; and that neither the plaintiff nor her husband ever received any compensation for such real estate, either from such railroad company or from its successors in the occupancy and use of such real estate, the defendants herein. The railroad was built and completed on

and over such real estate in December, 1860, more than twenty years before plaintiff commenced this action, and since its completion such railroad tracks and real estate had been continuously, openly and notoriously occupied and used for railroad purposes by defendants herein, and other railroad companies, during all that time. It is true that the evidence shows that in 1860 the Evansville and Crawfordsville Railroad Company and its engineers entered upon the land in controversy, then owned by William H. Nye, over his protest, and constructed the grade and laid the tracks on and over such real estate. William H. Nye, then the owner of the land, "saw General Steele, who was general manager of the railroad extension, and made protest to him. He said they wanted to go on with the work; that they were poor, but would fix it all right; that I should be paid what the land was worth." Mr. Nye did not testify in direct terms whether he did, or did not, accept and agree to the proposition of General Steele; but his entire evidence above set out clearly shows that he did accept and agree to such proposition. In other words, he licensed the railroad company to go on with its work of construction on and over the land in controversy, then owned by him, upon his faith in General Steele's statement that he should be paid thereafter what his land was worth. Five years afterwards, to wit, in 1865, Mr. Nye's evidence shows that he joined with the railroad company in submitting to arbitrators the question as to his damages for his land occupied and used by the railroad company. Indeed, the entire evidence in the record, without any conflict therein, clearly shows that the railroad company occupied and used the land in controversy, and built and completed its railroad on and over the same under a parol license from the owner of the land at the time, William H. Nye.

We are of opinion that the plaintiff has mistaken her remedy, if she has any after the lapse of so many years. It is certain that, upon the facts shown by the evidence, an action could not be maintained at the time this suit was com-

menced for the recovery of the real estate in controversy, after it had been openly and continuously occupied and used for so many years by defendants and other railroad companies for railroad purposes. In *Buchanan* v. *Logansport, etc., R. W. Co.,* 71 Ind. 265, a case very similar in some of its features to the case under consideration, the facts averred in the second paragraph of the railway company's answer, as summarized in the opinion, were not materially different, as far as they go, from the facts established by the evidence in this case ; and it was there held that such facts constituted a good defence to an action in ejectment to recover of the railway company the land whereon it had entered under a parol license, and constructed its line of railway, although it appeared that the owner had not been compensated for such land. So, in *Campbell* v. *Indianapolis, etc., R. R. Co.,* 110 Ind. 490, which was a suit to recover the possession of a strip of land occupied and used by the defendant for its road-bed and right of way for fourteen years, it was held that where a railroad company enters on land under a parol license, upon the faith of which it expends large sums of money in the construction and maintenance of its road-bed and tracks thereon, the licensor and those claiming under him with notice will be estopped to revoke such license, where the licensee can not be placed *in statu quo.* It was further held in the case last cited, that the occupancy and use of land by a railroad company for a road-bed and track for the running of trains, is sufficient notice, to one claiming under the licensor, of the company's equity. See, also, *Midland R. W. Co.* v. *Smith, post,* p. 233.

Upon the facts shown by the evidence in this case, the only cause of action that can exist, at this late day, is one for compensation by way of damages for the real estate occupied and used by the defendants for railroad purposes. That cause of action, however, vested in William H. Nye, the owner of the land in controversy at the time it was taken for railroad uses ; it was a chose in action, and the evidence

fails to show that he has ever assigned it to any one. It did not pass to plaintiff herein under the deed to her of the land mentioned in the evidence. Such cause of action can only be enforced, if not barred by lapse of time, by William H. Nyc. This seems to be settled by our decisions. *Church* v. *Grand Rapids, etc., R. R. Co.,* 70 Ind. 161; *Indiana, etc., R. W. Co.* v. *Allen,* 100 Ind. 409. We decide nothing on this point, however, in the case in hand, as the question is not presented by the record.

The motion for a new trial ought to have been sustained.

The judgment is reversed, with costs, and the cause remanded for a new trial, etc.

