(December 11, 1909.)

## BOISE VALLEY CONSTRUCTION CO., Respondent, v. THEODORE KROEGER, Appellant.

[105 Pac. 1070.]

Construction of Contract—Maturity of Obligation—Compensation for Railroad Right of Way—Action for Compensation by Land Owner—Waiver of Tort and Action on Implied Promise—Acquiescence in Use of Right of Way—One Action for Permanent Injury—Measure of Damages to Real Estate.

1. Agreement sued on in this action considered, and *held* that it embodies two separate and independent contracts.

2. A contract, whereby the obligor promises and agrees to pay a railroad company the sum of $600 "as soon as said first parties [the railroad company], or their assigns, have constructed and put into operation an electric railway line from the city of Boise to the strip of land above described, said first parties to give street-car service of intervals of· not more than thirty minutes, and to charge a fare from the city of Boise to said strip of land of not more than five cents," is certain and definite as to the time the obligation becomes due; and, while parol evidence is admissible to explain what was meant by "other considerations" named in the contract, it cannot vary the specific terms as to the time at which the obligation becomes due. *Held,* also, that the term "to the strip of land above described" does not mean "upon or over the strip of land above described."

3. Where K.'s land has been appropriated by a railroad company for its right of way, and a road has been built thereon, K. may elect to waive his remedies in ejectment, injunction, and trespass, and may sue as upon an implied promise and contract· to pay rea-

sonable compensation for the lands taken. In such case, the land owner has a right to assume that the company could acquire his land by proceedings in condemnation, and he may therefore waive such proceeding and assume that the railroad company will pay him reasonable compensation therefor. If it fails to keep its implied contract in this respect, he may have his action for the value of the land taken as upon contract.

4. Instruction given by the court as to acquiescence examined, and *held* that, while the conduct set forth and enumerated in the instruction would preclude the land owner from thereafter resorting to the action of ejectment against the railroad company and also preclude him from obtaining an injunction against the company continuing its work and operations, still such conduct would not divest him of the title to his property, and would not be inconsistent with the assumption on his part that the company would pay him reasonable compensation for the land taken.

5. *Held,* that the following instruction was erroneous: "If you believe from the evidence, as alleged in the answer, that plaintiff committed injuries to the lands of the defendant in the building of the railway grade mentioned in the pleadings and the evidence, and you further believe from the evidence that since the commission of such injury, defendant has sold and disposed of his said lands, then the court instructs you that the defendant may not recover for any injuries to said lands, save such as may have accrued to the same, as you may believe from the evidence accrued thereto, between the building of such grade or embankment and the time of the sale of such lands."

*Held,* further, that where the acts of the tort-feasor have been completed and consummated, and the causes from which the injury must necessarily flow are patent and obvious, that in such case the injury is of such a permanent nature that the whole damages, past, present, and prospective, may be recovered in one action, and that one recovery only should be allowed. .

6. Actions against railroad and other public service corporations for damages committed by them in the construction of their roads differ from actions for damages sustained by reason of the maintenance of a nuisance, and should not be governed by the rule applicable to nuisance cases.

7. The rule in this state as to the measure of damages to real property is as follows:

"If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction with legal interest thereon to the time of the trial.

"If the land is permanently injured but not totally destroyed, the owner will be entitled to recover the difference between the ac-

tual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

"If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial."

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Fremont Wood, Judge.

Action by the plaintiff for debt.   Answer and counterclaim by defendant denying the maturity of the obligation and alleging damages to real estate.   Judgment for plaintiff and defendant appealed.   *Reversed.*

D. D. Williams, Gustave Kroeger, and J. C. Johnston, for Appellant.

The remedy of injunction and ejectment cannot be invoked after the road has been constructed and possession of the land taken by the company for railway purposes.   Defendant's action then was only an action for damages.   (*Lawrence v. Morgan's etc. R. & Steamship Co.,* 39 La. Ann. 427, 4 Am. St. 265, 2 So. 69; *St. Julian v. R. Co.,* 35 La. Ann. 924; *Hall v. Pickering,* 40 Me. 548; *Baker v. R. Co.,* 57 Mo. 265; *McClinton v. R. Co.,* 66 Pa. 404; *Tompkins v. R. Co.,* 21 S. C. 420; *Rio Grande etc. Ry. Co. v. Oritz,* 75 Tex. 602, 12 S. W. 1129; *International etc. Ry. Co. v. Juina & Benitos,* 59 Tex. 326; *Midland Ry. Co. v. Smith,* 125 Ind. 509, 25 N. E. 153; *Bloomfield R. Co. v. Grace,* 112 Ind. 128, 13 N. E. 680; *Evansville etc. R. Co. v. Grady,* 6 Bush (Ky.), 144, 145; *Chicago & Iowa R. R. Co. v. Davis,* 86 Ill. 20; 16 Cyc. 768, note 95; *Western Pennsylvania R. Co. v. Johnston,* 59 Pa. 290, 291; *Thornton v. R. Co.,* 84 Ala. 109, 5 Am. St. 337, 4 So. 197; *Galveston etc. R. Co. v. Pfeuffer,* 56 Tex. 66, 67.)

Where a railroad company has constructed and is operating its railroad through a piece of land belonging to another, without having obtained a right of way by formal condemnation proceedings, and without having procured any title

to the land over which it operates its railroad or any easement therein, the owner of the land may waive formal condemnation proceedings and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may maintain an action against the company for damages. (*Cohen v. R. Co.*, 34 Kan. 158, 55 Am. St. 242, 8 Pac. 138; *Zimmerman v. R. Co.*, 144 Fed. 622, 623, 75 C. C. A. 424; 18 Cent. Digest, sec. 729; *United States v. Great Falls Mfg. Co.*, 112. U. S. 645, 5 Sup. Ct. 306, 28 L. ed. 846; 2 Elliott on Railroads, secs. 1048, 1055; *Wichita etc. R. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362; *Knox v. R. Co.*, 58 Hun (N. Y.), 517, 12 N. Y. Supp. 848; *Southern Ry. Co. v. Hood*, 126 Ala. 312, 85 Am. St. 32, 28 So. 662; *Cowan v. Ry. Co.*, 118 Ala. 554, 23 So. 754.)

A land owner whose premises are entered by a railroad company without his consent and without condemnation proceedings is entitled to the value of the land when taken, and the injury or diminution in the value caused to the remainder. (*Southern R. Co. v. Cowan*, 129 Ala. 577, 578, 29 So. 985; *R. Co. v. Combs*, 39 Am. & Eng. Ry. Cas. 140; *Donald v. R. Co.*, 52 Iowa, 411, 3 N. W. 462; *Daniels v. R. Co.*, 41 Iowa, 52; *Texas etc. R. Co. v. Matthews*, 60 Tex. 215; *Houston etc. R. Co. v. Adams*, 63 Tex. 200.)

"If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal intest thereon to the time of the trial." (*Young v. Extension Ditch Co.*, 13 Ida. 174, 89 Pac. 296.)

The refusal to grant the amendment was an abuse of discretion, as it deprived the defendant in the court below of a substantial right. (*Palmer v. Utah Ry. Co.*, 2 Ida. 382-384, 16 Pac. 553; *Idaho Placer Min. Co., Ltd., v. Green*, 14 Ida. 294, 94 Pac. 161.)

When a written agreement states a consideration in general terms, it is competent to show by parol the particulars included in the general description, in order to show that there has been a failure of consideration, and the extent of

it. (*Lufburrow v. Henderson*, 30 Ga. 482; 6 Am. & Eng. Ency. of Law, 2d ed., 666, 767, 797; *Railway Co. v. Doss* (Tex. Civ. App.), 36 S. W. 497; *Louisville etc. R. Co. v. Neafus*, 93 Ky. 53, 18 S. W. 1030.)

Matters independent of the contract may be proven by parol, and oral testimony may be introduced to show a consideration additional to that expressed in the contract. (*Windsor v. Ry. Co.*, 37 Wash. 156, 79 Pac. 613; *L'Engle v. Ins. Co.*, 48 Fla. 83, 111 Am. St. 70, 37 So. 462, 67 L. R. A. 581; *First National Bank v. Rothschilds*, 107 Ill. App. 133; *Barnes v. Black*, 193 Pa. 450, 74 Am. St. 694, 44 Atl. 550; *Huckestein v. Kelley & Jones Co.*, 152 Pa. 631, 25 Atl. 747; *Martin v. Rotan Grocery Co.* (Tex. Civ. App.), 66 S. W. 212; *Trimmier v. Liles*, 58 S. C. 284, 36 S. E. 652.)

If adjoining owners occupy their lands with reference to a certain dividing line, with intent to claim up to such line, mere passive acquiescence will be sufficient to make such line binding, it being unnecessary that there be an express agreement, or act amounting to an implied agreement. (*Diehl v. Zanger*, 39 Mich. 601; *Liddon v. Hodnett*, 22 Fla. 454; *Idaho Land Co. v. Parsons*, 3 Ida. 450, 31 Pac. 791; *Sneed v. Osborn*, 25 Cal. 619.)

After the original monuments are gone, and such period of time has elapsed that no one can be found who remembers to have seen them, or can testify as to their location, uniform continued occupancy, by buildings, fences, or other equivalent indications of ownership, is evidence that the land was located according to the original monuments. (*Cutts v. King*, 5 Me. 482; *Roberts v. Ivey*, 63 Ga. 622; *Browning v. Atkinson*, 46 Tex. 605; *Smith v. McAllister*, 14 Barb. (N. Y.) 434; *McGee v. Stone*, 9 Cal. 600.)

The injury caused to the land by the acts of the plaintiff was a permanent one for which damages might be at once fully recovered. (*Stodghill v. Ry. Co.*, 53 Iowa, 341, 5 N. W. 495; *Fowle v. New Haven & Northampton Co.*, 112 Mass. 334, 17 Am. Rep. 106; *Van Pelt v. City of Davenport*, 42 Iowa, 314, 20 Am. Rep. 622; *Dickson v. Ry. Co.*, 71 Mo. 575;

*Gulf etc. Ry. Co. v. Donahoo,* 59 Tex. 128; *Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296.)

Ira E. Barber, for Respondent.

Amendments primarily are within the discretion of the court. (*Palmer v. Utah Ry. Co.,* 2 Ida. 382, 16 Pac. 553; *Lowe v. Long,* 5 Ida. 122, 47 Pac. 93; *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461.) The amendment proposed by appellant would not have permitted the introduction of testimony which was not admissible under their first cross-complaint, and therefore it was not error to refuse permission to amend their second cross-complaint. (*Kroetch v. Empire Mill Co.,* 9 Ida. 277, 74 Pac. 868; *Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 93.)

Where parties established as a party line any other than the true line, there must have been mutual acquiescence for the statutory period and a mutual claiming to the established line. If parties claim only to the true line, wherever it may be, adverse user does not confer title beyond the true line. (4 Am. & Eng. Ency. of Law, 866; *Schraeder etc. Co. v. Packard,* 129 U. S. 688, 9 Sup. Ct. 385, 32 L. ed. 760; *Davenport v. Turpin,* 43 Cal. 597; *Mullaney v. Duffy,* 145 Ill. 559, 33 N. E. 750; *Raynor v. Timerson,* 51 Barb. 517; *Allen v. Reed,* 51 Cal. 362.)

The injury, if any, accruing to this land by reason of the digging of the ditch upon the right of way of the railroad is a continuing injury, and one for which the successor in title would have a right of action. (*Ohio etc. Ry. Co. v. Wachter,* 123 Ill. 440, 5 Am. St. 532, 15 N. E. 279; *Van Hoozier v. Ry. Co.,* 70 Mo. 145; *New York National Bank v. Met. Er. Co.,* 108 N. Y. 660, 15 N. E. 445; *City of North Vernon v. Voegler,* 103 Ind. 314, 2 N. E. 821; *Smith v. Seattle,* 18 Wash. 484, 63 Am. St. 910, 51 Pac. 1057; *Church v. Paterson,* 66 N. J. L. 218, 49 Atl. 1030, 55 L. R. A. 81; *Bank v. Waterman,* 26 Conn. 324.)

The English courts hold to the same doctrine. (*Whitehouse v. Fellows,* 10 C. B., N. S., 765; *Lamb v. Walker,* L. R. 3 Q. B. (Div.) 389; *Mitchell v. Darley etc. Co.,* L. R. 14 Q. B. (Div.) 125.)

"Where one fails to assert a right and in the meantime other rights have accrued, he should be precluded from asserting his right on the ground of laches." (*Frier v. Lowe*, 232 Ill. 622, 83 N. E. 1083.)

AILSHIE, J.—This action was commenced for the recovery of the sum of $600 on a contract entered into between the appellant and H. P. Ustick, as trustee for the respondent company. The contract sued upon is set out at length in the complaint and reads as follows:

"This agreement, between H. P. Ustick, trustee, parties of the first part, and Theodore Kroeger, party of the second part, is to the effect:

"First.—That for and in consideration of the sum of $1.00, the receipt whereof is hereby acknowledged, and other considerations, I hereby agree to deliver unto said first parties, by good and sufficient warranty deed, a strip of land described as follows:

"The north 30 feet of the southeast quarter (S. E. ¼) of the southeast quarter (S. E. ¼) of section twenty-two (22), T. 3 N., R. 2 E., in the County of Ada, State of Idaho, for the purpose of and as a right of way for an electric railway, to be built upon standard gauge, and operated by said first parties, or their assigns, said deed to be delivered, by me to said first parties, or their assigns, as soon as the track of such electric railway is laid upon the above described property; and,

"For and in consideration of the sum of $1.00, the receipt whereof is hereby acknowledged, and other considerations, I further agree and contract to pay to said first parties the sum of Six Hundred and no-100 dollars, as soon as said first parties, or their assigns, have constructed and put into operation an electric railway line from the city of Boise to the strip of land above described, said first parties to give street-car service of intervals of not more than 30 minutes and to charge a fare from the city of Boise to said strip of land of not more than 5 cents.

"This contract binds the heirs, successors, and assigns of the parties hereto."

The defendant answered, admitting the execution of the agreement, but denying that the plaintiff in the action had performed the contract on its part, and by way of further defense alleged that, as part of the consideration for the execution of the contract to pay the sum of $600 mentioned therein, Ustick as trustee, or his assigns, were to construct the electric railway mentioned in the contract so that it would extend the full length of the north side of the tract of land described in the agreement, and that both the plaintiff and Ustick have failed, neglected and refused to so construct the line of road.

It is further alleged in the answer that the plaintiff's agent, Ustick, knew and understood that defendant entered into such contract and agreement to pay the sum of $600 for and in consideration of the road being built upon the strip of land mentioned and described in the agreement, and that it was the purpose and intention of the defendant to subdivide his tract of land into smaller tracts and build houses thereon for rent and sale, and that the failure on the part of the plaintiff to build and erect its railway on such ground amounted to a failure of consideration for the promise to pay the said sum of $600.

It is also alleged that in building its line of road plaintiff had dug and excavated a large ditch on the south side of its track, partly on the land of defendant and partly on the thirty-foot right of way above referred to, and that the ditch or excavation had been so made and maintained that the water used by the defendant in irrigating the remainder of his tract of land adjoining the right of way would flow and run off into the ditch, and in so doing cut deep ditches or gullies on defendant's land, and otherwise damage the lands of defendant adjoining the said right of way, and render a part of defendant's land worthless, to his damage in the sum of $600.

For a further and second defense and counterclaim the defendant set up the contract sued upon, and alleged that he

had promised and agreed to convey a thirty-foot right of way along the north side of his place for the purpose of building and constructing plaintiff's line of railway, but that instead of using and occupying the same and building the road thereon, the plaintiff had used and occupied a portion of defendant's land contiguous to the proposed right of way, and was occupying the same with its track and right of way to the damage of defendant in the further sum of $600. Defendant prays judgment for the sum of $1,200 for the damages sustained by reason of the acts set out in his answer and counterclaims. Judgment was entered in favor of the plaintiff for the sum of $580, and defendant has appealed.

A great many errors have been assigned, but we shall not undertake to treat them separately or in detail, as a consideration of a part only of the assignments will dispose of all and settle this appeal.

In the first place, it was contended by the defendant that he was not liable to pay the $600 under this contract until the plaintiff should complete the construction of its line of road the full length of this strip of land agreed to be conveyed by defendant as a right of way. The court construed the agreement as embodying two separate and distinct contracts—the first for the conveyance of a right of way as set out and described in the agreement, and the second as a separate and distinct contract to pay the sum of $600 at the time and in the manner specified in the agreement, viz., "as soon as said first parties, or their assigns, constructed and put into operation an electric railway line from the city of Boise to the strip of land above described," and on the condition that the company should give a street-car service at intervals of not more than thirty minutes, and charge a fare of not to exceed five cents, between Boise City and the strip of land described in the agreement. The court accordingly took the view, and so instructed the jury, that this $600 became due as soon as the company completed its line of road *to the strip or tract of land* described in the agreement, to be conveyed for a right of way, and the maintenance of a thirty-minute service at a five-cent fare. We are satisfied that the court placed the cor-

rect construction on this contract. It embodied two separate and distinct contracts, and under its terms the company might have earned the right to collect this sum of money and yet not be in a position to demand the right of way. It was clearly entitled to collect the sum agreed to be paid upon completion of its road to the boundary line of defendant's premises as described in the agreement and instituting the service as stipulated. Appellant contends that he was entitled to show by parol what the "other consideration" was as mentioned in the agreement. That position is correct, and was so recognized by the trial court, but that does not affect, alter or modify the stipulation in the agreement that the money should be paid "as soon as said first party, or his assigns, have constructed and put into operation an electric railway line from the city of Boise *to the* strip of land above described, etc." This fixes the maturity of the obligation to pay.

The inquiry as to whether the road has been built over the lands proposed to be given and in accordance with the contract will properly arise at such time as the company demands a conveyance for the right of way. It is not involved in this action.

In the progress of the trial the defendant asked leave to amend his second alleged counterclaim so as to set out the contract entered into between the parties, and to allege the corporate capacity of the plaintiff, and more fully plead the fact that the plaintiff corporation had taken and occupied and used a portion of defendant's land not embraced in the right of way which defendant had contracted to convey. The record is not entirely clear as to the extent of the proffered amendment, but the position taken is clarified by the ruling of the court denying the application of the defendant to amend. The court said:

"You have apparently attempted to set up that they had taken an additional tract of land to this thirty-foot strip, and the allegation does not support the fact, although your evidence, perhaps one view of it, will show that; but I am satisfied even if that was true, that there would not be a good

cause of action for a counterclaim here, because if they have taken land that did not belong to them, why the defendant still owns the land and would own the land; if you recovered judgment, it would not settle the question of title here to the property, and I do not believe defendant can sell that strip of land in that way. If they have taken land he has not conveyed to them or agreed to convey to them, the defendant's action would probably be by ejectment, and with that view of the case I don't see any necessity for granting permission to amend because it would be necessary for you to amend further, and that additional amendment the court will still hold is not a subject of counterclaim, the taking of additional land, because you are asking for the full value of it, and if the court should award it, you would still own the land after you had the value of it, the title would still be in your client, or his grantee, whoever it might be."

It will thus be seen from the ruling of the court that the court took the view that a person whose land has been taken by a railroad company for a right of way, without being taken under a conveyance, dedication or in the exercise of the right of eminent domain, cannot maintain an action against the company for the value of the property taken. This necessarily leads to an inquiry as to the rights of a land owner whose lands have been seized and entered upon by a public service corporation without first obtaining the right to do so either by contract or by pursuing the statute conferring the power of eminent domain.

In *United States v. Great Falls Mfg. Co.*, 112 U. S. 645, 5 Sup. Ct. 306, 28 L. ed. 846, the supreme court of the United States was considering a case where the agents of the government had appropriated private property for a public use without any previous conveyance, dedication, or condemnation, and the court in passing on the question said:

"The law will imply a promise to make the required compensation, where property, to which the government asserts no title, is taken pursuant to an act of Congress, as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the govern-

ment as well as with common justice, the claimant's cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the court of claims, of actions founded upon any contract, express or implied, with the government of the United States.''

In *Cohen v. St. L., Ft. S. & W. R. R. Co.*, 34 Kan. 158, 55 Am. Rep. 242, 8 Pac. 138, the supreme court of Kansas considered the right of a land owner to waive the remedies of ejectment, injunction, and trespass, and to sue for the value of the land taken, and the rule adopted is stated in the syllabus as follows:

''Where a railroad company has constructed and is operating its railroad through a piece of land belonging to another, without having obtained a right of way by any formal condemnation proceedings, and without having procured any title to the land over which it operates its railroad or any easement therein, the owner of the land may waive formal condemnation proceedings and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may commence an ordinary action to recover compensation for all the damages which he has sustained by reason of the permanent taking and appropriation of the right of way by the railroad company.''

Elliott on Railroads, vol. 2, section 1048, says: ''In many of the states a suit at common law may be maintained upon the implied promise to pay a just compensation for the lands taken. And for any taking or injury for which the statute does not provide a remedy, the land owner may sue at common law. Some of the courts hold that even though the original taking was wrongful, the land owner may affirm the taking and sue for compensation, and a recovery in such a suit vests the right to the lands in the defendant.'' Many cases are cited in the notes to this text sustaining the principle as stated. For authorities to the same effect, see *Central Branch U. P. R. Co. v. Andrews*, 26 Kan. 702; *Wichita & W. R. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362; *Evans-*

*ville etc. R. Co. v. Nye,* 113 Ind. 223, 15 N. E. 261; *Lawrence v. R. R. Co.,* 39 La. Ann. 427, 4 Am. St. 265, 2 So. 69; *Zimmerman v. Kansas City & N. W. R. R. Co.,* 144 Fed. 622, 75 C. C. A. 424; *So. Ry. Co. v. Hood,* 126 Ala. 312, 85 Am. St. 32, 28 So. 662; *Galveston H. & S. A. R. Co. v. Pfeuffer,* 56 Tex. 66.

It must be remembered that in this case the company which is alleged to have appropriated appellant's land is a corporation that is granted the right of eminent domain by both the constitution and statute of this state. (Const., art. 1, sec. 14; Rev. Codes, sec. 5210; *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046.) Appellant knowing, therefore, as he must have, that the respondent company had the right to take his property by proceedings under the power of eminent domain, might have concluded to waive the condemnation proceedings and take the value of the premises appropriated without any controversy over the right to take the same. He likewise had a right to assume that the company would pay him a reasonable compensation therefor. If it failed to do so, he would be clearly entitled to sue on the implied promise and contract to pay him the reasonable value of the land taken. If the company entered upon appellant's land with his consent and acquiescence, and thereafter constructed its railroad and began operating its trains, it would then be engaged in a lawful business of a *quasi*-public character in serving the public, and it would then be too late for appellant to pursue his remedy against the company by way of ejectment or injunction. (*So. Ry. Co. v. Hood,* 126 Ala. 312, 85 Am. St. 32, 28 So. 662; *Evansville & T. H. R. Co. v. Nye,* 113 Ind. 223, 15 N. E. 261; 16 Cyc. 768, and cases cited in note.) Whether it entered and took possession of his lands either with or without his consent or acquiescence, he would still have a right to assume, in the absence of an agreement or understanding to the contrary, that the company would pay him the reasonable value of the lands taken. If A steals B's horse, B may pursue the property in claim and delivery, or he may waive the tort and sue as upon contract for the reasonable value of the animal, and A will not be heard in a court of

justice to answer and deny the contract and set up as a defense that he stole the animal. So, in a case of this kind, if A should seize and appropriate B's real estate for an easement authorized under the constitution and statute of the state, B may maintain his action to oust and eject the trespasser, or he may enjoin him from using and occupying the land, or he may waive both such remedies and sue upon an implied contract to pay reasonable compensation for the property taken. In the latter event, title to the easement vests in the company appropriating the property when the judgment is paid, in the same manner as it does upon condemnation under the statute.

While the court's statement as to the appellant's rights with reference to any additional land the company had taken for its right of way was erroneous as a matter of law, still it is doubtful if any error was committed in this respect on account of the defective and insufficient manner in which the second counterclaim had been pleaded, and but very little improvement was offered to the pleading by the proposed amendment. It may be said, however, that the defendant in the action was forestalled by the announcement of the court as to his view of the law. A complaint in such case, seeking to recover the value of land taken by a public service corporation where no condemnation has been had, should be specific as to the description of the premises and also as to its allegations showing that the pleader is proceeding on the theory that the land has been wholly taken, and that he is seeking the entire value thereof, so that after judgment and payment the right to the easement may vest in the company. (*Wichita & W. R. Co. v. Fechheimer,* 36 Kan. 45, 12 Pac. 362.)

Since we have concluded that this case must be reversed on other grounds, we advise that the defendant be allowed to amend his counterclaim, if he so desires, in order to bring the same within the rule herein announced.

Appellant requested an instruction as to the effect of a boundary line which existed between his property and that of the adjoining owners, announcing the rule as to the relative weight and importance to be given to such boundary line

and a survey establishing the true line after the disappearance of the government monuments. The court declined to give the requested instruction, but instead thereof gave the following instruction:

"You are instructed that if you find from the evidence that the row of trees testified to has been acquiesced in and adopted by the owners of the tracts of land as the dividing line between the land of the defendant and the line adjoining on the north for a long period of years, and the owners of the two tracts have cultivated and improved their respective land up to the said line for a period of time longer than five years, then such fact would be better evidence of the location of the line between the two tracts of land than any survey made since such row of trees was adopted as such line.

"If, however, you find from the evidence that the plaintiff when locating its line found that said trees were not the correct dividing line and afterward constructed its road on the true line, and that the defendant before said road was constructed had an actual survey made and found thereby that the line adopted by plaintiff was correct, and thereafter stood by without objection and permitted the plaintiff to construct its works upon such line, then in that event he should not be permitted after construction of said road to complain that it was not constructed upon the true line."

The first part of this instruction announcing the law as to acquiescence in the boundary line established by the coterminous land owners was as favorable to appellant as he was entitled to have given to the jury. That instruction is in substantial accord with the rule recently announced by this court in *Bayhouse v. Urquides, ante,* p. 286, 105 Pac. 1066. Appellant assigns error against the giving of the latter part of the foregoing instruction as to his right to recover in the event he had permitted the plaintiff to construct its road upon his land, or had acquiesced therein. This part of the instruction was erroneous. While such conduct on the part of the appellant would have precluded him from subsequently maintaining the action of ejectment against the railroad company and likewise have prevented him from maintaining

injunction against the company continuing its construction and operation (*So. Ry. Co. v. Hood,* 126 Ala. 312, 85 Am. St. 32, 28 So. 662; *Evansville & T. H. R. Co. v. Nye,* 113 Ind. 223, 15 N. E. 261), still such conduct would not divest him of the title to his property, nor would it be inconsistent with the assumption on his part that the company would pay him for the land that it was appropriating for its right of way. (See cases hereinbefore cited.)

Appellant assigns the giving of the following instruction as error:

"If you believe from the evidence, as alleged in the answer, that the plaintiff committed injuries to the land of the defendant in the building of the railway grade mentioned in the pleadings and the evidence, and you further believe from the evidence that since the commission of such injury the defendant has sold and disposed of his said lands, then the court instructs you that the defendant may not recover for any injuries to said lands save such as may have accrued to the same as you may believe from the evidence accrued thereto, between the building of such grade or embankment and the time of the sale of such lands."

It appeared from the evidence that appellant had sold this land and parted with the title some time prior to the commencement of this action, and that evidence is clearly what called forth this instruction.

There seems to be a diversity of opinion among the courts as to the particular actions of this character in which one recovery only will be allowed, and that for past, present and prospective damages, and the cases in which a separate recovery will be allowed from time to time for recurring damages that may be sustained by the party. There is a long line of authorities, however, holding that where the acts of the tort-feasor have been completed and consummated and the causes from which the injury must necessarily flow are patent and obvious, and the injury, if any, is permanent, that past, present, and prospective damages can as readily be estimated in advance as after successive damages have occurred, and that the better rule is to allow only one recovery and

permit it to embrace all damages for past, present, and future injury to the property. (*Chicago & Eastern R. Co. v. Loeb,* 118 Ill. 203, 59 Am. Rep. 341, and note, 8 N. E. 460; *Fowle v. New Haven & Northampton Co.,* 112 Mass. 334, 17 Am. Rep. 106.)

The general rule is well stated by the supreme court of Massachusetts in *Fowle v. New Haven & Northampton Co.,* as follows:

"As a general rule, a new action cannot be brought unless there be a new unlawful act and fresh damage. . . . . The case at bar is not to be treated strictly in this respect as an action for an abatable nuisance. More accurately it is an action against the defendant for the construction of a public work under its charter in such a manner as to cause unnecessary damage by want of reasonable care and skill in its construction. For such an injury the remedy is at common law. And if it results from a cause which is either permanent in its character, or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and probable future injury."

Sutherland, speaking of the general rule, says: "When a wrongful act is done which produces an injury which is not only immediate, but from its nature must necessarily continue to produce loss independently of any subsequent wrongful act, then all the damages resulting, both before and after the commencement of the suit, may be recovered in one action." (4 Suth. Dam., sec. 1042.) Mr. Freeman states the rule as follows: "All the damages which can by any possibility result from a single tort form an indivisible cause of action. . . . . For damages *alone* no action can be permitted. Hence if a recovery has once been had for the unlawful act, no subsequent suit can be sustained. There must be a fresh act as well as a fresh damage." (Freeman on Judgments, sec. 241.) Mayne on Damages, p. 138, says: "Similar questions often arise in cases where a person by digging, mining, building, or the like, affects the plaintiff's land or house in such a manner as to produce injurious consequences, which manifest themselves at a later period. Here it is now set-

tled that all subsequent or recurring damage may be assessed, and can only be recovered in a suit brought upon the original cause of action." In *Powers v. Council Bluffs*, 45 Iowa, 652, 24 Am. Rep. 792, the city cut a ditch along the side of the plaintiff's lot and caused his lands to be overflowed, and it was held that the cause of action was complete when the unlawful act was committed, and that all of the damages accruing from the original wrong must be included in one action. The latter case was approved in *Stodghill v. C. B. & Q. R. Co.*, 53 Iowa, 341, 5 N. W. 495. The strongest and perhaps most exhaustive case holding to the contrary rule is that of *Uline v. N. Y. C. & H. R. R. Co.*, 101 N. Y. 98, 54 Am. Rep. 661, 4 N. E. 536; see, also, note to same case in 53 Am. Rep. 123.

The diversity of opinion existing seems to have arisen out of the common-law rule allowing repeated and successive actions against a party maintaining a nuisance, but there is a distinction between cases of nuisance and those cases where the damage arises out of the construction or operation of a railroad, for the reason that such a work or improvement constitutes a public highway, and is authorized and recognized by law, and the right of way itself and all necessary ground incident thereto may be taken in condemnation, so that the road and the work necessary and incident to its maintenance cannot be abated as a nuisance. The theory on which actions were allowed to be prosecuted against one maintaining a nuisance was that continued and repeated actions would overcome the persistency of the party maintaining the nuisance and would result in its abatement. No such a rule can exist in the case of a railroad company, and besides the law looks with disfavor on a multiplicity of actions and rather favors the settlement and determination of all matters that can be settled in one action. The purchaser from appellant took whatever portion of the land he acquired as it existed after the construction of the road, and he could not recover damages for the original wrong. (*Chicago & E. R. Co. v. Loeb*, 118 Ill. 203, 59 Am. Rep. 341, 8 N. E. 460, and note; *Stodghill v. C. B. & Q. R. Co.*, 53 Iowa, 341, 5 N. W. 495.)

Appellant assigns as error the action of the court in giving the following instruction with reference to the measure of damages to be applied in the event the jury found in favor of the cross-plaintiff:

"If the jury believe from the evidence in this case that the plaintiff in constructing its railway entered upon and made excavations upon defendant's land in the manner charged in the cross-complaint and answer, then the measure of damages, if you find from the evidence that the defendant has been damaged, would be the diminution of the value of defendant's land thereby; and unless you find from the evidence that the defendant's lands have been diminished in value by the making of said excavations and the digging of said ditch mentioned in the pleadings and evidence, your verdict on the question of damages will be for the plaintiff."

The most serious objection to this instruction is the uncertainty with reference to the character of taking, injury or damages to which it is intended to apply. We assume, however, that the court had in mind the evidence adduced with reference to the excavations and ditches dug by the railway company, constituting a permanent injury to cross-plaintiff's land, in which event the rule announced by the court was substantially the same as has been announced by this court. The rule as to the measure of damages was announced by this court in *Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296, and is as follows:

"If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction with legal interest thereon to the time of the trial.

"If the land is permanently injured but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

"If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to re-

pair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial.''

We are entirely satisfied with this rule, and will not pause to consider, at this time, the reasons for the rule or open that question to further consideration.

A number of other assignments of error have been argued, but we do not find any further question that is likely to arise on the retrial of this case that deserves or requires our consideration here. From what has been said it appears at once that a new trial must be had in this case. A new trial is rendered particularly necessary by reason of the instruction to the effect that the appellant could not recover damages which had not been actually sustained up to the time of his conveyance of the property. Judgment is *reversed,* and a new trial ordered. Costs awarded in favor of appellant.

Sullivan, C. J., and Stewart, J., concur.